PARKER, Ch. J., GRAY, BARTLETT, MARTIN, VANN and WERNER, JJ., concur.

Judgment of conviction affirmed.

---

ANNA S. GRIFFEN, as Administratrix of WALTER H. GRIFFEN, Deceased, Respondent, v. WILLIAM DE FOREST MANICE, Appellant.

1. NEGLIGENCE — INJURY RESULTING FROM FALL OF ELEVATOR — RES IPSA LOQUITUR. Where, upon the trial of an action against the owner of an office building to recover damages for the death of plaintiff's intestate, who was the secretary of a company which had leased offices in the basement and also in the seventh and eighth stories of the building and in which there was maintained and operated an elevator for the carrying of passengers to and from the several floors, it appeared that on the day in question, while the deceased was returning on the elevator from the eighth floor to the basement, the car descended with unusual rapidity and, instead of stopping at the lowest floor, passed beyond and struck the bumpers at the bottom of the shaft with such force as to rebound and immediately thereafter the counterbalance weights fell down the shaft and broke through the top of the car, one of them striking and killing the intestate, the trial court is justified

in permitting the jury to infer negligence from the accident, under the doctrine of *res ipsa loquitur*, since it could not ordinarily have occurred had the elevator machinery been in proper condition and properly operated, the term "accident" being construed to include not only the injury but the attendant circumstances.

2. DEGREE OF CARE REQUIRED IN MAINTENANCE AND OPERATION OF ELEVATOR. An instruction that the defendant was required to use the utmost care and diligence and is liable for the slightest neglect against which human prudence and foresight might have guarded is reversible error, since as to the machinery and appliances by which the elevator was moved and controlled, and in its maintenance and operation, he was required to use only reasonable care.

3. WHEN COVENANT IN LEASE RELEASING OWNER FROM LIABILITY DOES NOT RELIEVE HIM FROM RESPONSIBILITY. The fact that the deceased was in the employ of a tenant of the defendant who had entered into a written lease, a covenant of which provided that "the landlord shall not be responsible for any loss or injury arising from or during the use or operation of the elevator or the carelessness or negligence of any person," but not purporting to apply to the personal rights of the officers or employees of the tenant, does not relieve the defendant from responsibility, since the right of the deceased to transportation in the elevator was based on the general invitation of the defendant to persons having business to transact in the building.

*Griffen* v. *Manice*, 47 App. Div. 70, reversed.

(Argued January 28, 1901; decided March 12, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered January 30, 1900, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*David B. Hill* and *John E. Parsons* for appellant. It was error for the court to charge that a tenant in an office building has the right in using an elevator to rely upon its being in perfect condition. (*Stierle* v. *Union Ry. Co.*, 156 N. Y. 74; S. & R. on Neg. § 50; *Tousey* v. *Roberts*, 114 N. Y. 312; *Mitchell* v. *Marker*, 62 Fed. Rep. 139; *Treadwell* v. *Whittier*, 80 Cal. 574; *Flynn* v. *Central R. R. Co.*, 142 N. Y. 443; *Biddiscomb* v. *Cameron*, 35 App. Div. 563; *Lof-*

*tus* v. *U. Ferry Co.*, 84 N. Y. 455; *Shattuck* v. *Rand*, 142 Mass. 83; *W. U. T. Co.* v. *Wood*, 88 Ill. App. 375.) The rule *res ipsa loquitur* was not applicable in this case, because no contractual relation existed between the parties. (*Cosulich* v. *S. O. Co.*, 122 N. Y. 118; *Kister* v. *Manh. Ry. Co.*, 40 App. Div. 441; *Volkmar* v. *Manh. Ry. Co.*, 134 N. Y. 418; *Hogan* v. *Manh. Ry. Co.*, 149 N. Y. 23; *May* v. *Berlin I. B. Co.*, 43 App. Div. 572.) The rule *res ipsa loquitur* was not applicable to this case, because it could not be said that the accident was one which, in the ordinary course of things, would not have happened if the required degree of care had been exercised. (*Stewart* v. *Ferguson*, 164 N. Y. 553; *Volkmar* v. *Manh. Ry. Co.*, 134 N. Y. 421; *Mullen* v. *St. John*, 57 N. Y. 567; *Byrne* v. *Boodle*, 2 H. & C. 722; S. & R. on Neg. § 59; *Seybolt* v. *N. Y., L. E. & W. R. R. Co.*, 95 N. Y. 562; *Scott* v. *L. D. Co.*, 3 Hurl. & Colt, 596; Am. & Eng. Ency. of Law [2d ed.], 629; *Hogan* v. *Manh. R. Co.*, 149 N. Y. 23; Thompson on Neg. 1230; *Briggs* v. *Oliver*, 4 H. & C. 403.) The court erred in charging the jury that the clause of the lease offered in evidence was no defense to the action. (*Kenney* v. *N. Y. C. & H. R. R. R. Co.*, 125 N. Y. 422; *Blair* v. *Erie Ry. Co.*, 66 N. Y. 313; *Brewer* v. *N. Y., L. E. & W. R. R. Co.*, 124 N. Y. 59.) The court erred in charging that the defendant, as owner of an office building containing an elevator, was subject to the same rule regarding the amount of care to be used as is applicable to a carrier of passengers, and in refusing to charge that the defendant was only bound to exercise reasonable care in the construction, maintenance and operation of the elevator. (*McGrell* v. *B. O. B. Co.*, 153 N. Y. 265; *Biddiscomb* v. *Cameron*, 35 App. Div. 563.) It was error for the court to charge that the defendant in this case was bound to exercise the utmost care, and liable for the slightest neglect, and to refuse to charge that it was only bound to exercise reasonable care. (*Morrison* v. *Met. T. & T. Co.*, 69 Hun, 100; *Larkin* v. *O'Neill*, 119 N. Y. 221; *Tousey* v. *Roberts*, 114 N. Y. 312; 2 S. & R. on Neg. subd. 704; *Volkmar* v. *Man. Ry. Co.*, 134 N. Y. 418; *Hogan* v. *Man.*

*Ry. Co.*, 149 N. Y. 23 ; *Mullen* v. *St. John*, 57 N. Y. 569 ; *Indermaur* v. *Dames*, L. R. [1 C. P.] 274.)

*Robert M. Boyd, Jr.*, for respondent. The charge of the court that the rule *res ipsa loquitur* was applicable in this case was correct. (5 Am. & Eng. Ency. of Law [2d ed.], 629 ; *Seybolt* v. *N. Y., L. E. & W. R. R. Co.*, 95 N. Y. 562 ; *Edgerton* v. *N. Y. & H. R. R. Co.*, 39 N. Y. 227 ; *O'Flaherty* v. *N. El. R. R. Co.*, 34 App. Div. 74 ; *Clarke* v. *N. El. R. R. Co.*, 9 App. Div. 54 ; *Bridges* v. *R. W. Co.*, L. R. [6 Q. B.] 377 ; *Kaiser* v. *Latimer*, 40 App. Div. 149 ; *Kister* v. *M. Ry. Co.*, 40 App. Div. 441 ; *Mullen* v. *St. John*, 57 N. Y. 567 ; *Holbrook* v. *U. & S. R. R. Co.*, 12 N. Y. 243 ; Thompson on Neg. 1228 ; Horton on Neg. 421.) It was not error for the court to charge that, as to the machinery and appliances by which the elevator was moved and controlled, the defendant was bound to use the highest degree of care and diligence. (*McGrell* v. *B. O. B. Co.*, 153 N. Y. 265 ; *Savage* v. *Bauland Co.*, 42 App. Div. 285 ; *Krey* v. *Schlussner*, 16 N. Y. Supp. 695 ; *H. D. Co.* v. *Sollitt*, 172 Ill. 222 ; *Obendorfer* v. *Pabst*, 76 N. W. Rep. 338.) It was not error for the court to charge that a tenant in an office building has the right in using an elevator to rely upon it being in perfect condition. (*Peil* v. *Reinhart*, 127 N. Y. 381.)

CULLEN, J. This action was brought to recover damages for the death of plaintiff's intestate, alleged to have been caused by the defendant's negligence. On December 6, 1898, the defendant was the owner and in possession of an office building in the city of New York in which there was maintained and operated an elevator for carrying passengers to and from the several floors. The deceased was the secretary of the United States Fire Insurance Company, which had leased offices in the basement and also in the seventh and eighth stories. On the day in question, after having attended a meeting of the directors of the company, held on the eighth story, he took the elevator to return to the basement. The evidence tends to show that the elevator car descended with

unusual rapidity, and, instead of stopping at the basement, which was the lowest floor, passed beyond until it struck the bumpers at the bottom of the shaft with such force as to rebound about eighteen inches and throw some of the occupants of the elevator down. Almost immediately thereafter the counterbalance weights, which move in a reverse direction to that of the car and consist of pieces of iron, each from forty to sixty pounds in weight, fell down the shaft, breaking through the top of the elevator car. One of them struck the plaintiff's intestate on the head, killing him instantly. The plaintiff recovered a verdict at the Trial Term, and the judgment entered thereon was unanimously affirmed by the Appellate Division. By leave of the Appellate Division an appeal has been taken to this court.

As the decision below was unanimous, the exception to the denial of the defendant's motion to dismiss the complaint at the close of the evidence and the question of the sufficiency of the evidence to support the verdict cannot be argued in this court (Constitution, art. VI, § 9), and our review of the case must be confined to the correctness of the trial court in its rulings on the admission of evidence and its charge to the jury. We shall limit our discussion to the consideration of the three most important objections urged by the appellant against the recovery.

The trial court, over the appellant's exception, charged to the jury: "There is another rule which the plaintiff asks me to call your attention, and I am going to call to your attention the rule that where an accident happens which, in the ordinary course of business, would not happen if the required degree of care was observed, the presumption is that such care was wanting, and if you find in this case that this accident was one which, in the ordinary course of business, would not have happened if the required degree of care was observed, you have a right to presume that such care was wanting." It is insisted for the appellant that this instruction was erroneous, and that the jury was not authorized in this case to infer the existence of negligence from the accident alone. Primarily, it is

argued that the principle which usually passes under the name of "*res ipsa loquitur*," applies only to cases where the relation between the parties is the contractual one of carrier or bailee, or in which the party injured has been injured while on a public highway. While there are some expressions to be found in text books and decisions which seem to support this claim, in my judgment it is unfounded and the application of the principle depends on the circumstances and character of the occurrence, and not on the relation between the parties, except indirectly so far as that relation defines the measure of duty imposed on the defendant. Writing of "*res ipsa loquitur*," it is said in Shearman & Redfield on Negligence (§ 59) : " It is not that, in any case, negligence can be assumed from the mere fact of an accident and an injury; but in these cases the surrounding circumstances which are necessarily brought into view by showing how the accident occurred contain, without further proof, sufficient evidence of the defendant's duty and of his neglect to perform it. The fact of the casualty and the attendant circumstances may themselves furnish all the proof of negligence that the injured person is able to offer, or that it is necessary to offer." I think a single illustration will show the correctness of the view of the learned authors, that it is not the injury, but the manner and circumstances of the injury, that justify the application of the maxim and the inference of negligence. If a passenger in a car is injured by striking the seat in front of him, that of itself authorizes no inference of negligence. If it be shown, however, that he was precipitated against the seat by reason of the train coming in collision with another train or in consequence of the car being derailed, the presumption of negligence arises. The "*res*," therefore, includes the attending circumstances, and, so defined, the application of the rule presents principally the question of the sufficiency of circumstantial evidence to establish, or to justify the jury in inferring, the existence of the traversable or principal fact in issue, the defendant's negligence. The maxim is also in part based on the consideration that where

the management and control of the thing which has produced the injury is exclusively vested in the defendant, it is within his power to produce evidence of the actual cause that produced the accident, which the plaintiff is unable to present. · Neither of these rules — that a fact may be proved by circumstantial evidence as well as by direct, and that where the defendant has knowledge of a fact but slight evidence is requisite to shift on him the burden of explanation — is confined to any particular class of cases, but they are general rules of evidence applicable wherever issues of fact are to be determined either in civil or criminal actions. In a prosecution for selling liquor without license, it is sufficient for the people to show the sale, leaving the defendant to show his license if he has one. · (*Potter* v. *Deyo,* 19 Wend. 361.) Recent possession of stolen goods warrants the inference that the possessor is the thief, both because experience shows that usually the party so in possession is the thief, and because the knowledge of how he came into possession of the goods is generally exclusively his own. In *Breen* v. *N. Y. Central, etc., R. R. Co.* (109 N. Y. 297) it is said: "There must be reasonable evidence of negligence, but when the thing causing the injury is shown to be under the control of a defendant, and the accident is such as, in the ordinary course of business, does not happen if reasonable care is used, it does, in the absence of explanation by the defendant, afford sufficient evidence that the accident arose from want of care on its part." I can see no reason why the rule thus declared is not applicable to all cases or why the probative force of the evidence depends on the relation of the parties. Of course, the relation of the parties may determine the fact to be proved, whether it be the want of the highest care or only want of ordinary care, and, doubtless, circumstantial evidence, like direct evidence, may be insufficient as a matter of law to establish the want of ordinary care, though sufficient to prove absence of the highest degree of diligence. But the question in every case is the same whether the circumstances surrounding the occurrence are such as to justify the jury in inferring the fact

in issue. In *Mullen* v. *St. John* (57 N. Y. 567) it was held that the falling of an adjacent building into the street whereby the plaintiff traveling on the street was injured, was *prima facie* evidence of negligence. In *Piehl* v. *Albany Railway Co.* (30 App. Div. 166; affirmed, 162 N. Y. 617) a fly wheel was disrupted and a portion of it cast across the street into a saloon, killing the plaintiff's intestate. It was held that the mere bursting of the fly wheel was not sufficient to warrant an inference of negligence. These two cases proceeded on the differing views that this court took as to the nature of the respective accidents, not on the situation of the parties. I think it may be safely said that we would not have held the defendant liable in the latter case had Piehl been killed in the street, or in the earlier case, the defendant exempt, had the plaintiff been injured while in a neighboring building. To put it tersely, the court thought that in the absence of tempest or external violence a building does not ordinarily fall without negligence; while it also thought that the disruption of a fly wheel proceeds so often from causes which science has been unable to discover or against which art cannot guard, that negligence cannot be inferred from the occurrence alone. Authority is not wanting on the point. In *Green* v. *Banta* (16 Jones & Spencer, 156) a workman was injured by the breaking down of a scaffold. In a suit against his master, the court charged: " The fact that the scaffold gave way is some evidence — it is what might be called *prima facie* evidence — of negligence on the part of the person or persons who were bound to provide a safe and proper scaffold." This charge was held correct by the General Term of the Superior Court of the city of New York and the decision affirmed by this court (97 N. Y. 627). In *Mulcairns* v. *City of Janesville* (67 Wis. 24) the fall of a wall was held presumptive evidence of negligence in a suit by a servant against his master. In *Smith* v. *Boston Gas Light Company* (129 Mass. 318) it was held that the escape of gas from the pipes of a gas company was *prima facie* evidence of negligence. In that case there seems to have been no contractual relations whatever between the par-

ties.   In *Peck* v. *N. Y. Central R. R. Co.* (165 N. Y. 347),
which was an action for injury to plaintiff's property by fire,
it was said : " But while it was necessary for the plaintiff to
affirmatively establish negligence on the part of the defendant,
either in the condition or in the operation of its engine, for
which the mere occurrence of the fire was not sufficient, it
was not necessary that he should prove either the specific
defect in the engine or the particular act of misconduct in its
management or operation constituting the negligence causing
the injury complained of.   It was sufficient if he proved facts
and circumstances from which the jury might fairly infer that
the engine was either defective in its condition or negligently
operated."   This is the principle which underlies the maxim
of " *res ipsa loquitur*."   When the facts and circumstances
from which the jury is asked to infer negligence are those
immediately attendant on the occurrence, we speak of it as a
case of " *res ipsa loquitur;* " when not immediately connected
with the occurrence, then it is an ordinary case of circum-
stantial evidence.   In *Benedick* v. *Potts* (88 Maryland, 52) it
is said : " In no instance can the bare fact that an injury has
happened, of itself and divorced from all the surrounding cir-
cumstances, justify the inference that the injury was caused
by negligence.   It is true that direct proof of negligence is
not necessary.   Like any other fact, negligence may be estab-
lished by the proof of circumstances from which its existence
may be inferred.   *    *    *    This phrase (*res ipsa loquitur*),
which literally translated means that ' the thing speaks for
itself,' is merely a short way of saying that the circumstances
attendant upon an accident are themselves of such a character
as to justify a jury in inferring negligence as the cause of that
accident."

Returning now to the case before us, it appears that the
deceased was present by the implied invitation of the defend-
ant, extended to him and all others who might have lawful
business on the premises, to use the elevator as a means of
proceeding from one story to another.   The defendant, there-
fore, owed the plaintiff the duty of using at least reasonable

care in seeing that the premises were safe. The death of the plaintiff's intestate was caused by the fall of the counterbalance weights. These weights were held in a frame, to which was attached a rope or cable passing around a drum. The weights fell down from the frame and the rope was thrown off the drum. That no such accident could ordinarily have occurred had the elevator machinery been in proper condition and properly operated seems to me very plain. The court was, therefore, justified in permitting the jury to infer negligence from the accident, construing, as I do, the term accident to include not only the injury but the attendant circumstances.

The next exception of the appellant relates to the degree of care which the learned trial court instructed the jury the defendant was bound to exercise. The court charged: " As to the machinery and appliances by which an elevator is moved and controlled in its ascent and descent an owner is bound to use the utmost care as to any defect which would be liable to occasion great danger or loss of life, and he is in that respect subject to the same rule that applies to a railroad company in regard to its roadbed, engine and other similar machinery. Now, the rule that is applicable to a railroad company as to its roadbed, engine and machinery is that they are bound to exercise the utmost care and diligence and are liable for the slightest neglect against which human prudence and foresight might have guarded." This instruction is sustained by the decision of the Supreme Court of California in *Treadwell* v. *Whittier* (80 Cal. 574). In *McGrell* v. *Buffalo Office Building Co.* (153 N. Y. 265) the question was discussed by counsel, but not passed upon by the court in its disposition of the case. In determining the correctness of the rule of liability laid down by the trial court, the relation of the parties, which I think not controlling on the application of the maxim "*res ipsa loquitur*," is of vital importance. Doubtless no distinction can be drawn between vertical transportation and horizontal transportation, or transportation along the surface of the earth. If the relationship between the parties and the character of the carrier are

the same in both cases, there is no reason why the same measure of diligence should not be exacted in one case as in the other. But the defendant was not a common carrier, and received no compensation, at least directly, for carrying persons from one floor to another. The right of any person to be carried in the elevator was based on the implied invitation to enter, which the defendant as owner of the property is deemed to have extended to all who might have business on the premises. To such persons the law imposed upon the occupant or owner the duty of seeing that the premises were in a reasonably safe condition for access and entering (2 Shearman & Redfield, § 704; *Beck* v. *Carter*, 68 N. Y. 283); but "the measure of his duty was reasonable prudence and care." (*Larkin* v. *O'Neill*, 119 N. Y. 221; *Hart* v. *Grennell*, 122 N. Y. 371.) If the charge of the trial court is to be sustained, we must hold that the maintenance and operation of an elevator form an exception to the general standard of care imposed by the law upon the owners and occupants of real property. We see no reason for making this exception. The operation of an elevator, no doubt, involves danger, and if accident occurs it may result in most serious consequences. It is not, however, the only dangerous appliance used in modern buildings. The boiler which furnishes steam heat, the conductors through which electric light is furnished, may at times be the cause of serious accidents. An open hatchway is equally dangerous. Yet, it has never been attempted to impose upon the owner of a building any greater responsibility as to these matters than that of exercising reasonable care. It is very probable that, in the advance of mechanical arts, many new appliances will be introduced into buildings, which will involve danger. It seems to me impracticable to distinguish as to the measure of the owner's duty between these appliances, and that such an attempt would involve great confusion in the law. I do not wish to be misunderstood. In the exercise of the same degree of care, different degrees of precaution may be necessary. The same man with equal prudence will leave an article of furniture unguarded in his

house and carefully secrete or lock up jewelry or money. So, the more dangerous an appliance may be, the more attention may be requisite. If the fair purport of the charge of the court was only that the care should be commensurate with the danger, it might not be objectionable. The charge, however, goes far beyond this. The utmost human care and foresight would require the owner of a building to use the most modern and improved form of elevator, the latest successful mechanical device and the most skillful operators. Such is the rule in the operation of railroads, and this degree of diligence may well be required where, for a consideration, there is a contract to carry safely. But common knowledge informs us that such a rule would be unreasonable applied to elevators in ordinary buildings. There are elevators not only in great office buildings and hotels, but also in small buildings, and even in many private houses. Where there is little traffic the duty of operating the elevator is at times imposed on an employee or servant with other work to perform. To require in all these cases (and I do not see how it is possible to distinguish between them on the law) the same measure of duty that is imposed on a railroad company or common carrier would be going too far. I think sufficient security is afforded the public when owners or occupants of a building are required to use reasonable care in the character of the appliance they provide and in its maintenance and operation. The stairways are always open to those who deem this degree of diligence inadequate for their protection. The charge of the learned trial court was, therefore, erroneous.

Though what has been said disposes of the appeal, another question is presented to us, which, as it will arise on a new trial, we think proper to decide. By the written lease between the defendant and the insurance company it is provided that "the landlord shall not be responsible for any loss or injury arising from or during the use or operation of the elevator or the carelessness or negligence of any person." The appellant contends that by this provision he is exempt from any liability for the injuries to the plaintiff's intestate. The lease was

attested by the deceased as secretary of the company in accordance with its by-laws. It must be presumed, therefore, that he was aware of its contents and assented to its terms, if those terms affected him. But the lease does not purport to apply to the personal rights of the officers or employees of the lessee. (Opinion, ALLEN, J., *Blair* v. *Erie Ry. Co.*, 66 N. Y. 313.) There is this marked distinction between the present case and those in which the carrier has sought to be relieved from liability to a servant injured on a train, by virtue of the terms of some agreement with the employer, exempting the carrier from liability. In those cases, the right of the employee to be on the train at all emanated from the contract made with his employer. Not so here. The right of the deceased to transportation in the elevator was based on the general invitation of the defendant to persons having business to transact in the building. The fact that he was in the employ of the tenant did not limit his rights.

The other exceptions argued by the learned counsel for the appellant relate to rulings that may not occur upon a new trial, and, therefore, do not require our notice; for the error in the charge already stated, the judgment should be reversed and a new trial granted, costs to abide the event.

GRAY, J. I concur with Judge CULLEN's opinion, in so far as it holds that the judgment should be reversed and a new trial had for the error committed by the trial court in instructing the jury as to the degree of care which the defendant was bound to exercise.

I have grave doubts whether this is a case for the application of the rule *res ipsa loquitur;* which has never been applied to this class of cases.

As it is unnecessary to our decision that the question of the application of the rule should be passed upon, I think it is wiser policy to reserve it for a future occasion.

BARTLETT, J. (dissenting). I agree with Judge CULLEN that the court was justified in permitting the jury to infer negligence from the accident.

I also agree that the lease has no effect on plaintiff's right to recover.

I dissent from that portion of the prevailing opinion which holds the charge of the trial judge erroneous which instructed the jury that as to the machinery by which an elevator is moved and controlled the owner is bound to exercise the utmost care and diligence, and is liable for the slightest neglect against which human prudence and foresight might have guarded. In these days of lofty buildings and the annual transportation of millions of passengers in elevators by interested owners, who could not otherwise rent their property, public policy requires them to exercise the same degree of care as is imposed on common carriers.

VANN and WERNER, JJ., concur with CULLEN, J., for reversal; GRAY, J., reads concurring memorandum, with whom PARKER, Ch. J., concurs; BARTLETT, J., reads dissenting memorandum, with whom MARTIN, J., concurs.

Judgment reversed, etc.