per team, and it was known to the plaintiff that no policy for a less rate would be issued by the company, and that rebates or obtaining insurance by brokers offering to refund to the insured a portion of their commissions was not allowed. The defendants were not aware that the insurance company would not issue a policy for less than $16.50 per team. Concealing from the insurance company the rate made by him to the defendants, the plaintiff procured from the company binding slips covering the liability of the defendants until policies of insurance could be issued. Subsequently, and before the policies were issued, the defendants learned that under no circumstances would the insurance companies issue the policies for less than $16.50, and they thereupon notified the plaintiff that they would not accept the policies from him. The sole disputed question at issue before the court was whether the defendant agreed to accept policies issued at a rate fixed by the company at $16.50 and receive a rebate from the plaintiff to such an amount as would reduce the premiums to the sum of $14.50 per team, or whether the plaintiff promised and agreed to procure the insurance policies from the company at a rate fixed at $14.50, which the plaintiff concededly did not, and which the testimony clearly showed he could not, do. Upon this question the court below found in favor of the defendants. Such a finding was proper from the testimony in the case, and defendants were not liable for a breach of contract as sued for, and the judgment should be affirmed.

Judgment affirmed, with costs. All concur.

---

(45 Misc. Rep. 568)

MUNZER v. INTERURBAN ST. RY. CO. et al.

(Supreme Court, Appellate Term. December 7, 1904.)

1. CARRIERS—INJURY TO PASSENGER—EVIDENCE—RES IPSA LOQUITUR.

　　A horse, being driven along a street which intersected one in which defendant street railway company's tracks were laid, became frightened at a point 120 feet from the intersection, and, running toward the tracks, collided with a car in which plaintiff was a passenger, whereby he was injured. Held, in an action against the railway company and the one controlling the horse and wagon, that an instruction that the mere happening of the accident created a presumption of negligence on the part of the carrier, and that the burden of proof was cast on it to overcome it, was erroneous.

Appeal from City Court of New York, Trial Term.

Action by Andrew J. Munzer against the Interurban Street Railway Company and another. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant street railway company appeals. Reversed.

Argued before FREEDMAN, P. J., and BISCHOFF and GILDERSLEEVE, JJ.

Bayard H. Ames and F. Angelo Gaynor, for appellant.
Maurice Fitzgerald, for respondent.

FREEDMAN, P. J.  The action was brought against the defendant appellant and one Comstock to recover damages for personal injuries alleged to have been sustained by the plaintin by reason of the joint negligence of said defendants in permitting a collision to occur between a horse and wagon, controlled by Comstock, and a car of the railway company, in which the plaintiff was a passenger.  The jury found a verdict against the railroad company only.  The horse and wagon were being driven west through Sixty-Third street as the car on Madison avenue approached said street in its northerly course.  There was a puddle of water in Sixty-Third street about 120 feet east of the easterly crosswalk at Madison avenue.  The horse shied at this puddle, and immediately commenced to run, and continued running in a westerly direction until it collided with the car of the railway company, in which the plaintiff was seated, as the car was crossing Sixty-Third street.

Sufficient evidence was adduced at the trial to require the submission of the issues to the jury as against both defendants, but the verdict against the railway company cannot be sustained in the face of an error in the charge.  The jury were charged as follows:

"He [the plaintiff] was a passenger on the street railway car of the defendant.  The fact that the injury occurred to him while in that car, in a place of comparative safety, creates an impression that the railroad company was guilty of negligence, because it was bound to exercise the highest degree of care to protect its passengers, it being a common carrier for hire.  The railroad company seeks to overcome that presumption by showing that at the time this car was operated in the usual way, that it was running at the usual rate of speed, that the motorman in charge of the car had no notice of the presence of any danger, or that anything extraordinary was going to occur, and, while he was in control of this car, this horse suddenly dashed out and ran into the side of the car; that he brought his car to a stop as soon as he could; and that therefore it claims it was not guilty of negligence.  Gentlemen, if you believe that, then they have overcome the presumption of negligence, and shown a freedom from negligence which will entitle them to receive a verdict at your hands."

By this instruction the jury were told that the mere happening of the accident, as a matter of law, created an impression or presumption that the railway company was negligent, and that the burden of proof was cast upon it to overcome it.  Upon the facts of this case this was erroneous.  There were two actors in the collision, the motorman of the car and the driver of the horse and wagon.  It was entirely possible, and also entirely probable, that the collision might have been due solely to the fault of one of the parties, and that the other might have been in no way to blame.  Therefore the presumption of negligence arising from the accident did not tend to inculpate either party, and consequently it was for the jury to decide, as a question of fact, whether under the circumstances of the case the happening of the collision showed negligence on the part of the motorman.  Upon that question the burden of proof remained with the plaintiff.  As was said in Goodkind v. Metropolitan St. Ry. Co., 93 App. Div. 153, 87 N. Y. Supp. 523, even where the maxim of res ipsa loquitur is applicable, there must still be a finding of negligence by the jury, based upon com-

petent evidence, to entitle the plaintiff to a verdict, and the question as to whether negligence existed is a question which must be determined by the jury, and not by the court as a matter of law.

Writing of "res ipsa loquitur," it is said in Shearman & Redfield on Negligence (section 59):

"It is not that, in any case, negligence can be assumed from the mere fact of an accident and an injury; but in these cases the surrounding circumstances which are necessarily brought into view by showing how the accident occurred contain, without further proof, sufficient evidence of the defendant's duty and of his neglect to perform it. The fact of the casualty and the attendant circumstances may themselves furnish all the proof of negligence that the injured person is able to offer, or that it is necessary to offer."

The "res," therefore, includes the attendant circumstances, and, so defined, the application of the rule presents principally the question of the sufficiency of circumstantial evidence to establish, or to justify the jury in inferring, the existence of the traversable or principal fact in issue—the defendant's negligence. The maxim is also in part based on the consideration that, where the management and control of the thing which has produced the injury is exclusively vested in the defendant, it is within his power to produce evidence of the actual cause of the accident, which the plaintiff is unable to present. Griffen v. Manice, 166 N. Y. 188, 59 N. E. 925, 52 L. R. A. 922, 82 Am. St. Rep. 630.

In the case at bar there can be no pretense that the thing which produced the injury was in the exclusive management and control of the railway company. On the contrary, the horse which primarily caused the accident was under the management and control of Comstock. To make the defendant liable, the plaintiff was bound to establish that the motorman of the car should and could have perceived the danger in time, and avoided it. Under the circumstances of this case, therefore, the above instruction to the jury presents reversible error.

The judgment and order should be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.