## SCHACTELE v. BRISTOR.

(Supreme Court, Appellate Division, First Department. February 2, 1912.)

1. NEGLIGENCE (§ 121*)—RES IPSA LOQUITUR—BURDEN OF PROOF.

   The burden of establishing actionable negligence rests on plaintiff, notwithstanding the case is one in which the doctrine of res ipsa loquitur is applicable.

   [Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 224–228; Dec. Dig. § 121.*]

2. APPEAL AND ERROR (§ 216*)—OMISSION TO CHARGE—NECESSITY OF RE-QUEST.

   Failure of the trial judge to charge that the burden of proving actionable negligence was on plaintiff was not available for error, in the absence of a request so to charge.

   [Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 216;* Trial, Cent. Dig. § 627.]

3. LANDLORD AND TENANT (§ 167*)—DANGEROUS PREMISES—ELEVATORS—OVER-LOADING—RES IPSA LOQUITUR.

   In an action against the owner of a building for injuries to the employé of a firm engaged in moving the effects of a tenant into one of the upper lofts, by the fall of a freight elevator maintained for the use of all the tenants of the building, due to loading nearly or quite to its capacity, if not beyond it, the doctrine of res ipsa loquitur was not applicable; there being no contractual relation between plaintiff and defendant, and defendant owing to plaintiff no duty to furnish an elevator that would carry any amount of freight and weight which plaintiff saw fit to load upon it, and in any manner that he might distribute the weight.

   [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 668–679; Dec. Dig. § 167.*]

Appeal from Trial Term, New York County.

Action by George Schactele against Mary E. Bristor. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial, she appeals. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and McLAUGHLIN, MIL-LER, LAUGHLIN, and DOWLING, JJ.

George R. Bristor, for appellant.
Louis Steckler, for respondent.

LAUGHLIN, J. The plaintiff has recovered for personal injuries sustained by the fall of an elevator in defendant's building, No. 125 White street, in the borough of Manhattan, New York, on which he was riding, and which he alleges was out of repair. The accident occurred on the 17th day of April, 1909. It was a six-story building, with a loft on each floor. The defendant had rented the loft on the top floor of the building to the Dickinson Process Company, which was engaged in the lithographing business, from the 1st day of May thereafter; and on the day in question the plaintiff was engaged as foreman for the firm of Siler & Miller, with three other employés, who were under his direction, in moving the effects of the tenant from Brooklyn into this loft. The plaintiff came to the premises on a truck load of the tenant's goods. Another load arrived first, and the

goods had been unloaded and placed on the street floor, from which they were to be taken up in the elevator to the loft. Defendant's elevator operator, who was in charge of the elevator, directed plaintiff "to put the stuff on the elevator and take it upstairs." One load, consisting of a Wallabout machine weighing about 175 pounds, was taken up first and unloaded. Then, under the supervision of the plaintiff, a second load, consisting of two lithograph stones, together weighing about 175 pounds, two boxes of marble stones, weighing together about 200 pounds, and a side frame of a Washington hand press was put on the elevator, and thereupon plaintiff and two of his subordinates, and one Dickinson, representing the tenant, and his son, entered the elevator, making, with the operator, six persons in all. The operator then by direction of the plaintiff started the elevator, and it proceeded up until it reached a point at or near the fourth floor, when it stopped, and started to go down slowly, and then suddenly dropped to the cellar, and plaintiff sustained the injuries for which he seeks to recover damages.

The plaintiff testified that he weighed about 168 pounds, and he gave estimates with respect to the weight of the other occupants of the elevator, and of the freight which it was carrying, which together aggregated 1,400 or 1,425 pounds, and he then stated three times that the total weight was about 1,500 pounds, and that, although it was a good-sized elevator, they were obliged to crowd in order that all might get on. It appears that the capacity of the elevator was only 1,500 pounds, and there is evidence tending to show that its capacity was posted within the elevator; but this is controverted, and plaintiff testified that, not seeing the capacity of the elevator posted, he inquired of the operator, and was informed that its capacity was 2,500 pounds. The operator of the elevator was not produced at the trial, and evidence was offered by defendant tending to show inability to locate him. The evidence does not indicate, and it is not claimed, that the operator of the elevator was guilty of any negligence, unless with respect to informing plaintiff concerning the capacity of the elevator, or in permitting it to be overloaded.

In the complaint negligent operation and defective condition of the elevator and its appliances are alleged. Plaintiff testified that after the accident he saw the steel wire which held the counterweight lying on top of the elevator, where he did not and could not inspect it or look at it closely, and he first testified he did not know how it appeared or looked; but he afterwards stated that he thought it appeared yellow, like a rusty cable. Other evidence was offered to show that this cable broke, and two of plaintiff's subordinates testified that there were ragged edges where the cable broke, and that it appeared to be old and rusty. Dickinson testified that he did not examine the cable carefully; that he just glanced at it, and that it was old; and that he based his opinion on the fact that it looked different from two new cables that were on the elevator, but he could not say "it was a faulty one or anything wrong with it."

On the part of the defendant it was shown that the building was a modern fireproof building of stone and steel; that a fire occurred in it in the year 1907, in a part of the building away from the eleva-

tor; that after the fire the building was repaired, and the elevator and its cables were examined with a view to putting them in complete running order, and at that time some new cables were put in by the contractor to whom the work was let; that this work was completed in the year 1907 according to the testimony of defendant's husband, but according to the testimony of the contractor in the latter part of December, 1908, or early part of January, 1909; that none of the lofts had been occupied from the time of the fire until after the accident, the ground floor only being used as a school for children; and that after the completion of the repairs the elevator was only used to show the lofts to prospective tenants. The contractor who repaired the building after the fire, and inspected the elevator and put in some new cables and examined the others, testified that on the completion of the work he turned it over to the owner in proper repair and good order after examining the cables and testing the operation of the elevator; that within a couple of days after the accident he saw and examined the broken cable, and sawed off a piece where it was broken, and tested the strands separately; that it was not rotten, and that there was no more rust on it than would naturally be on a cable so situated; that the wires were as clean and bright as a wire could be, and that he not only tested them himself, but had them examined by another expert.

An elevator inspector of the bureau of buildings, in the employ of the city, testified that after the building and elevator had been repaired, following the fire, he, in the performance of his duty, inspected the cables and found no breaks or imperfections, and tested the elevator by putting a weight on it, and found it in good condition; that it was registered to lift 1,500 pounds, and that this was shown within the car at the back, and that 1,500 pounds was all that it was supposed to lift, although it might lift a little more; that after the accident he made another inspection, and found the drum counterweight cable broken, but that the cable was neither rotten, decayed, worn-out, nor old, and had every indication of being a good cable; that the manner in which this elevator was constructed was such that, if it had not been overloaded when the counterweight cable broke, it would have gone up, instead of down; and that in his opinion the break was caused by the counterweights coming in contact with the "overhead work," which might result from a variety of causes. The defendant also gave evidence tending to show that appearances in and about the elevator after the accident indicated that more material had been placed on the elevator than as shown by plaintiff's evidence, and that plaintiff admitted after the accident that he had overloaded the elevator and that he alone was responsible for the accident.

[1, 2] In submitting the case to the jury the learned trial court explained the doctrine of res ipsa loquitur, and charged that it was applicable to this case, and that it was for the jury to determine whether the evidence adduced on the part of the defendant was sufficient to overcome the plaintiff's prima facie case, established by proof of the accident and the attendant circumstances. Counsel for the appellant complains that, even on the theory that the doctrine of res ipsa loquitur

was applicable, the case was not properly submitted to the jury, for the reason that the jury were not instructed that, notwithstanding the application of the rule, the burden of establishing negligence rested on the plaintiff. That proposition is, of course, well settled. Cunningham v. Dady, 191 N. Y. 152, 83 N. E. 689. But it would not be available to the appellant, for the learned trial court did not charge the jury on the subject of the burden of proof in that regard at all, and no request to charge was presented.

[3] We are of opinion, however, that the doctrine of res ipsa loquitur was not applicable to this case. The plaintiff here was not using the elevator merely as a passenger; but he was using it to carry freight which was loaded under his supervision, and it is quite as probable on the evidence that the break of the cable was due to the elevator being overloaded, or improperly loaded in the distribution of the weight, as that it was owing to any defect in the cable. These facts clearly distinguish the case at bar from Griffen v. Manice, 166 N. Y. 188, 59 N. E. 925, 52 L. R. A. 922, 82 Am. St. Rep. 630, which case is the leading authority on the subject. Here there was no contractual relation between the plaintiff and the defendant, and the defendant did not owe the duty to the plaintiff to furnish an elevator that would carry any amount of freight and weight which he saw fit to load upon it, and loaded in any manner he might distribute the weight, and therefore the mere happening of the accident and the attendant circumstances, when the elevator was loaded to or nearly to its capacity, neither required nor justified the jury in drawing the inference of negligence against the owner of the premises. See Duhme v. Hamburg-American Co., 184 N. Y. 404, 77 N. E. 386, 112 Am. St. Rep. 615; Cunningham v. Dady, supra.

It follows, therefore, that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.