Markowitz, P.J.
(dissenting). Plaintiff, an orderly in the hospital of the third-party defendant, was seriously hurt on February 3, 1973, when the glass jar or humidifier attached to an oxygen tank supplied the hospital by defendant Keefe & Keefe, Inc. exploded and shattered as plaintiff was about to insert the oxygen tube in a patient.
The tanks were not sold to the hospital. When empty, they were picked up by Keefe & Keefe, Inc., refilled by another company, and redelivered to the hospital. The regulators and glass jars, on the other hand, were sold to the hospital, by appellant. As part of the arrangement, Keefe & Keefe, Inc. received a monthly sum to check the equipment, look for defects, and to correct any defects which were found.
Each tank held about 244 cubic feet of oxygen with a pressure of about 2,000 pounds. The glass jar, about six to seven inches long and three inches in diameter, had a thread on top by which it was screwed on and off by a regulator attached to the tank. The flow of oxygen was controlled by an adjustment knob and valve. The oxygen flowed from the tank through the regulator into the glass jar, where it bubbled up into the tube leading to the patient.
Plaintiff had been thoroughly trained in the use of the equipment, and had administered oxygen more than 300 times prior to the accident. He testified that at the time of the accident the jar had not been struck, and the adjustment knob had been properly turned to allow a limited flow of five liters of oxygen to the patient.
The indorsed complaint contained two causes of action: one in negligence; the other for breach of warranty. On the breach of warranty cause the Trial Judge charged the jury that when a seller places upon the market a product which is of such a character that when used for the purpose for which made, it is *303 likely, if defectively made, to be a source of danger, the law implies a warranty by the seller to any person he [seller] should reasonably foresee may use the product, that it is reasonably fit for the ordinary purpose for which it is used. If the product, the trial court continued, is in fact defective and not reasonably fit to be used for its ordinary purpose, the seller is liable to any person properly using the product for injury resulting from its defective and unfit condition. She put to the jury the application of these rules to the facts as they might find them, and advised them, in substance, that if defendant’s products were defective and the defective condition existed when the products were put on the market, the condition was a substantial factor in causing plaintiffs injuries, and plaintiff was not contributorily negligent, their verdict should be for plaintiff.
The court below also charged the jury under the first cause of action on the issue of negligence, based on the maintenance contract, followed by a charge dealing with plaintiffs possible contributory negligence. She directed that if plaintiff were found contributorily negligent, this would call for a verdict for defendant.
The only exception taken by the defendant on the issue of liability was to a statement in the charge that if the jury found that plaintiff did just as he testified he did when attempting to use the equipment, and was not negligent in the use of the equipment "you [the jury] may infer from the explosion that occurred, that the product was either defective and, therefore, was a violation or failure of the warranty and of fitness for use, or negligence in the repairing and maintenance of the machine. This is up to you, so that you are not required to infer this. I’m simply stating you may do this. This is your option.”
In due course the jury brought in a unanimous verdict for $10,000 which, with the consent of the plaintiff, was reduced by the Judge to $5,743.90.
My brethren dismiss the complaint, basically on the ground that in the fact pattern outlined above, despite the fact that plaintiff properly used the equipment for the purpose intended when sold, a defect could not be inferred from the unexplained explosion. I do not agree. As recently observed by Kupferman, J., writing for the majority of our Appellate Division in DeWitt Props. Assoc. v City of New York (47 AD2d 300, 303): "In Feblot v New York Times Co. (32 NY2d 486, *304 498-499) now Chief Judge Breitel found it useful in his concurring opinion to add some comments on the doctrine of res ipsa loquitur: 'The doctrine of res ipsa loquitur is only a species of the more general principle that circumstantial evidence of sufficient probative weight may permit the jury to find negligence (e. g., Griffen v Manice, 166 NY 188, 194-195; Prosser, Torts [4th ed.], at p 212). Where the particular requirements of res ipsa are not met, it may be appropriate to charge the more general doctrine. Thus, in Rogers v Dorchester Assoc. (32 NY2d 553, decided herewith), it was held proper to charge that circumstantial evidence of elevator door malfunction allowed the jury to infer negligent maintenance of the intricate devices controlling the door. What is required for application of the more general doctrine is only that there be a sufficient degree of probability, from the circumstances shown, including the circumstance, if present, of the defendant’s duty of maintenance and control over particular devices, to support the inference. In such an instance, the plaintiff may not have the burden, as he usually has in a negligence case, of establishing the precise cause of the malfunction.’ ”
So also in the case at bar. Given plaintiff’s freedom from contributory negligence, if appellant’s regulator, or appellant’s humidifier, were not defective, this accident would not have happened. That it did happen, despite the fact that an experienced operator carefully and properly used the equipment, presents a sufficient degree of probable negligence in its manufacture or maintenance to allow the jury so to infer without proof of the precise cause of the malfunction. This is all the Trial Judge did in her careful and articulate charge. In my opinion she had the right so to charge.
I therefore dissent and vote to affirm.
Frank and Dudley, JJ., concur in Per Curiam memorandum; Markowitz, P.J., dissents in a separate memorandum.
Judgment, entered July 2, 1974 reversed, with $30 costs, and complaint dismissed.