

ATTORNEYS FOR APPELLANT

Jon C. Abernathy
Andrew B. Janutolo
Goodin Abernathy, LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Jeffrey S. Zipes
Coots Henke & Wheeler, P.C.
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Meridian North Investments LP, <br><br> *Appellant-Defendant,* <br><br> v. <br><br> Anoop Sondhi DDS, MS, <br><br> *Appellee-Plaintiff.* | February 24, 2015 <br><br> Court of Appeals Cause No. 49A02-1405-PL-311 <br><br> Appeal from the Marion Superior Court <br> Cause No. 49D02-1210-PL-39036 <br><br> The Honorable Theodore M. Sosin, Judge |

**Barnes, Judge.**

# Case Summary

Meridian North Investments, LP ("Meridian North") appeals the trial court's denial of its motion for summary judgment against Anoop Sondhi, D.D.S., M.S. ("Dr. Sondhi"). We affirm.

# Issue

The restated issue before us is whether Dr. Sondhi personally is bound by exculpatory provisions in a lease with Meridian North that Dr. Sondhi signed on behalf of his orthodontic practice.

# Facts

In 1995, Meridian North agreed to lease space in an office building in Indianapolis to Anoop Sondhi, D.D.S., M.S., P.C. Dr. Sondhi signed the Lease as President of the named tenant, Anoop Sondhi, D.D.S., M.S., P.C. In 2002, the Lease was renewed. At that time, Dr. Sondhi signed the Lease as President of Sondhi Orthodontics, P.C. In 2009, the Lease again was renewed. At that time, Dr. Sondhi signed the Lease as President of Sondhi-Biggs Orthodontics, P.C. ("Sondhi-Biggs"); the Lease was co-signed by the Vice-President of Sondhi-Biggs, Jeffrey Biggs.

The Lease contained the following provision, Section 6.1, regarding maintenance of the premises by Meridian North:

**Services to the Leased Premises.** The Landlord shall provide:

(f) Maintenance and Repair of the Common Areas in a good and orderly condition including, but not limited to, lawn and shrub care, snow removal.

Landlord shall make reasonable efforts to provide the foregoing services, but in no event shall Landlord be liable for damages, nor shall the Rental abate due to any failure to furnish, or any delay in furnishing, any of the foregoing services which are caused by Landlord's inability to secure electricity, fuel, supplies, machinery, equipment, or labor, or which [sic] caused by necessary repairs or improvements, nor shall the temporary failure to furnish any such services be construes [sic] as a constructive evictions [sic] of the Tenant or relieve Tenant from the duty of observing and performing any of the provisions of this Lease.

App. p. 54-55.

[5] In addition, the Lease contained the following exculpatory clause, Section 9.5:

**Landlord's Non-Liability.** Landlord shall not be liable to Tenant, or any other person in the Leased Premises or in the Building by the Tenant's consent, invitation or license, express or implied, for any damage either to person or property sustained by reason of the condition of the Leased Premises or the Building, or any part thereof, or arising from the bursting or leaking of any water, gas, sewer or steam pipes, or due to any act or neglect of a co-tenant or other occupant of the Building or other person therein, or due to any casualty or accident in or about the Building.

*Id.* at 57.

[6] On the morning of December 22, 2010, Dr. Sondhi was injured when he slipped and fell on a patch of ice outside the office building as he was about to enter the building. Dr. Sondhi sued Meridian North, alleging it had been negligent in failing to keep the common areas of the office building free from ice and had breached its contractual obligation to clear ice from the premises.

Meridian North moved for summary judgment, asserting that the Lease exculpated it from liability for Dr. Sondhi's injuries. The trial court denied Meridian North's motion. Meridian North sought and obtained permission for an interlocutory appeal from this ruling.

## Analysis

We review the granting or denial of summary judgment using the same standard as the trial court: summary judgment is appropriate only where the designated evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *TP Orthodontics, Inc. v. Kesling*, 15 N.E.3d 985, 990 (Ind. 2014). "All facts and reasonable inferences drawn therefrom are construed in favor of the non-moving party." *Id.* In order to be entitled to summary judgment, a movant bears the initial burden of demonstrating the absence of any genuine issue of fact on a determinative issue. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). If the movant does so, the nonmovant then bears the burden of coming forward with contrary evidence showing an issue for the trier of fact. *Id.*

This case centers primarily upon interpretation of the Lease between Meridian North and Sondhi-Biggs: namely, whether the Lease exculpates Meridian North from liability for Dr. Sondhi's injuries, even if Meridian North was negligent or breached the Lease by failing to remove ice from outside the office building. Interpretation of a contract generally is particularly appropriate for resolution by summary judgment because it concerns a question of law.

*Vincennes Univ. ex rel. Bd. of Tr. of Vincennes v. Sparks*, 988 N.E.2d 1160, 1165 (Ind. Ct. App. 2013), *trans. denied*.

[9]     Meridian North contends the Lease, specifically Sections 6.1 and 9.5, is unambiguous and properly exculpates it from liability for Dr. Sondhi's injuries. Indiana law allows parties to a commercial lease, where there is equal bargaining power between the parties, to allocate risks and burdens between the landlord and tenant and permits the inclusion of exculpatory clauses absolving a landlord of liability to a tenant for the landlord's own negligence. *See Franklin Fire Ins. Co. v. Noll*, 115 Ind. App. 289, 298-99, 58 N.E.2d 947, 951 (1945); *see also Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1130 (Ind. 1995); *cf. Ransburg v. Richards*, 770 N.E.2d 393, 402-03 (Ind. Ct. App. 2002) (holding exculpatory clause in residential lease between sophisticated landlord and unsophisticated tenant violated public policy), *trans. denied*. Dr. Sondhi concedes that he is a sophisticated party, that he actively negotiated the Lease's terms, and that the Lease is governed by this general principle of law.

[10]    However, as Dr. Sondhi notes, the Lease is not between him and Meridian North; it is between Sondhi-Biggs and Meridian North. Dr. Sondhi signed the Lease in his capacity as President of the corporation. In Indiana, it is well-settled that, when an agent discloses the identity of his principal and does not exceed his or her authority when contracting on the principal's behalf, the agent is not personally bound by the contract unless the agent agrees to be so bound. *Fiederlein v. Boutselis*, 952 N.E.2d 847, 859 (Ind. Ct. App. 2011). Additionally, it is clear that "a corporation is a legal entity separate and distinct from its

shareholders and officers." *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1231-32 (Ind. 1994). "Although a corporation acts only through its agents, officers, shareholders, and employees, it is the corporate entity that is legally responsible for those acts." *Id.* at 1232. Thus, Dr. Sondhi personally was a third party to the lease, not a tenant.

[11] The Lease here purports to absolve Meridian North of liability not only for damages sustained by the tenant, which would be Sondhi-Biggs, but also "any other person in the Leased Premises or in the Building by the Tenant's consent, invitation or license, express or implied . . . ." App. p. 57. In *Vernon Fire & Cas. Ins. Co. v. Graham*, 166 Ind. App. 509, 336 N.E.2d 829 (1975), we addressed a lease agreement that contained nearly identical language purporting to exculpate the lessor from liability for injury to any person on the premises "by the Lessee's consent, invitation or license, express or implied . . . ." We held: "Third persons not parties or privy to such a contract are not bound by it. . . . Thus a third party injured upon the premises might properly recover against lessor for lessor's negligence." *Vernon Fire*, 166 Ind. App. at 512-13, 336 N.E.2d at 832. This principle has been repeated in a number of other cases, such as *Morris v. McDonald's Corp.*, 650 N.E.2d 1219 (Ind. Ct. App. 1995). Indeed, our supreme court has stated, "A person cannot limit his or her tort law duty to third parties by contract." *Rhodes v. Wright*, 805 N.E.2d 382, 385 (Ind. 2004); *see also Dutchmen Mfg., Inc. v. Reynolds*, 849 N.E.2d 516, 524 (Ind. 2006) ("Parties [to a contract] cannot by agreement transfer risk from themselves to non-parties.").

[12] Granted, these cases did not concern an injured third party who signed a lease in his or her representative capacity for a corporation. Although *Vernon Fire* suggests the possibility that a person who is "privy" to a lease may be bound by a landlord exculpatory clause, the statement was dicta, as there was no issue of privity in that case. No Indiana case has directly addressed a situation such as the one here. New York, however, follows Indiana's rule regarding the unenforceability of lease exculpatory clauses against third parties; that state's highest court did, some time ago, address a situation very similar to this one in *Griffen v. Manice*, 59 N.E. 925 (N.Y. 1901). In that case, the secretary of a corporation attested to a lease entered into between the corporation and a building owner. The lease contained a landlord exculpatory clause, which the building owner sought to enforce after the secretary was killed in an elevator accident and the secretary's estate sued the building owner. Although the court presumed that the secretary, by attesting to the lease, was aware of its contents and assented to its terms, it held the exculpatory clause did not bar the estate's action against the building owner. *Griffen*, 59 N.E. at 929. The court stated, "the lease does not purport to apply to the personal rights of the officers or employees of the lessee." *Id.* The court also observed that the death resulted from "the general invitation of the [building owner] to persons having business to transact in the building. The fact that [the secretary] was in the employ of the tenant did not limit his rights." *Id.*

[13] We find *Griffen* persuasive here. Although Dr. Sondhi signed the lease, the lease exclusively governs the business relationship between Meridian North and

Sondhi-Briggs. Sondhi-Briggs is a legal entity separate from Dr. Sondhi. The injury arose from Meridian North's implied invitation for business invitees to use the common areas to enter and exit the office building.

[14] Although Meridian North does not contend that Dr. Sondhi signed the lease in his personal capacity, it does argue that we should pierce the corporate veil and hold that that Sondhi-Biggs is not truly separate from Dr. Sondhi and, therefore, Dr. Sondhi personally is also a tenant under the Lease and is bound by the exculpatory clauses. "Indiana courts are reluctant to disregard a corporate entity, but will do so to prevent fraud or unfairness to third parties." *Winkler*, 638 N.E.2d at 1232. "The burden is on the party seeking to pierce the corporate veil . . . to establish 'that the corporation was so ignored, controlled or manipulated that it was merely the instrumentality of another, and that the misuse of the corporate form would constitute a fraud or promote injustice.'" *Id.* (quoting *Gurnik v. Lee*, 587 N.E.2d 706, 710 (Ind. Ct. App. 1992)). It may be appropriate to disregard the corporate form and pierce the corporate veil if a corporation is functioning as an alter ego or mere instrumentality of an individual or another corporation. *Reed v. Reid*, 980 N.E.2d 277, 301 (Ind. 2012).

> When determining whether a shareholder is liable for corporate acts, our considerations may include: (1) undercapitalization of the corporation, (2) the absence of corporate records, (3) fraudulent representations by corporation shareholders or directors, (4) use of the corporation to promote fraud, injustice, or illegal activities, (5) payment by the corporation of individual obligations, (6) commingling of assets and affairs, (7) failure to observe required corporate

formalities, and (8) other shareholder acts or conduct ignoring, controlling, or manipulating the corporate form.

*Id.*[1] Other considerations may include whether corporate assets were treated as personal assets by a shareholder and whether there has been an attempt to deceive third parties. *Winkler*, 638 N.E.2d at 1232. Additionally, because it is a highly fact-sensitive inquiry, piercing of the corporate veil should occur on summary judgment only "'in extraordinary circumstances.'" *Reed*, 980 N.E.2d at 301 (quoting *Community Care Ctrs., Inc. v. Hamilton*, 774 N.E.2d 559, 570 (Ind. Ct. App. 2002), *trans. denied*).

[15] Meridian North has made no argument, nor presented any evidence, that it was fraudulently misled about the capacity in which Dr. Sondhi signed the lease. It also has presented no evidence that there was any improper disregard of corporate formalities by Dr. Sondhi or Sondhi-Biggs. What Meridian North's argument boils down to is that Dr. Sondhi and Sondhi-Biggs are interchangeable because Sondhi-Biggs is a small professional corporation for Dr. Sondhi's practice of orthodontics that Dr. Sondhi founded, that bears Dr. Sondhi's name, and of which Dr. Sondhi is president. If we accepted this argument, the corporate form of numerous professional corporations in this state, such as medical and legal practices, could and would be ignored

---

[1] Other factors that may be considered in some cases include whether (1) similar corporate names were used; (2) multiple corporations shared common officers, directors, and employees; (3) the business purposes of the corporations were similar; and (4) the corporations were located in the same offices and used the same telephone numbers and business cards. *Reed*, 980 N.E.2d at 302. These factors are irrelevant here, as we are not considering whether two separate corporations should be treated as one.

routinely. That is not a tenable result, and it is contrary to the laws providing for the creation of such corporations and their recognition as legal entities separate from their creators, shareholders, and officers. Similarly, Meridian North contends that Dr. Sondhi "is avoiding all of the liabilities under the Lease which he negotiated." Appellant's Br. p. 12. We do not believe that Dr. Sondhi personally incurred liabilities or obligations under the Lease, as opposed to Sondhi-Biggs. We also are not persuaded by Meridian North's claim that the exculpatory clauses are entirely ineffective if they cannot be applied to Dr. Sondhi personally. The clauses still would apply to damages sustained by Sondhi-Biggs.

[16] There is insufficient evidence on summary judgment to pierce the corporate veil and make Dr. Sondhi interchangeable with Sondhi-Biggs. As such, Meridian North has failed to establish that Dr. Sondhi is effectively the tenant under the Lease and is personally bound by the exculpatory clauses. Dr. Sondhi's personal injury claim against Meridian North may proceed.[2]

---

[2] Because we have concluded that Dr. Sondhi is not personally bound by the exculpatory clauses, we need not address the parties' alternative arguments regarding whether the clauses absolved Meridian North of liability for its own negligence and whether they applied to the area of the premises where Dr. Sondhi slipped and fell. Additionally, the Lease contains an indemnification clause that may ultimately require Sondhi-Biggs to indemnify Meridian North for Dr. Sondhi's damages. Although Meridian North argued before the trial court that this clause should effectively bar Dr. Sondhi's lawsuit, it has not done so on appeal.

# Conclusion

[17] The trial court properly denied Meridian North's motion for summary judgment. We affirm.

[18] Affirmed.

May, J., and Pyle, J., concur.