(142 App. Div. 554.)

SCHLAPPENDORF v. AMERICAN RAILWAY TRAFFIC CO.

(Supreme Court, Appellate Division, Second Department.    January 31, 1911.)

1. MASTER AND SERVANT (§ 125*) — INJURIES TO SERVANT — LIABILITY OF MASTER.

The liability of a master for injuries to a servant by defects in machinery does not rest merely on the fact that something was out of order at the time of the accident, but there must be proof either of actual notice, or of the existence of a condition which would have resulted in notice, if there had been reasonable inspection on the part of the master.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 243–251; Dec. Dig. § 125.*]

2. MASTER AND SERVANT (§ 197*)—FELLOW SERVANTS—WHO ARE.

One employed as an ordinary laborer by a master, engaged in gathering ashes and refuse in a city, and the operator of the electric motor controlling a hoisting appliance constituting a part of the agencies maintained by the master in his business, are fellow servants, and at common law the master is not liable for the negligence of the operator.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 489–490; Dec. Dig. § 197.*]

3. MASTER AND SERVANT (§ 265*)—INJURY TO SERVANT—NEGLIGENCE.

The operator of an electric motor controlling a hoisting appliance constituting a part of the agencies maintained by a master in his business was notified of a defect in the appliance, and he notified a vice principal. The operator continued to use the appliance, and a servant was injured. The evidence did not show what directions, if any, the vice principal gave to the operator as to the continued use of the appliance until repairs were made. The operator testified that he thought that the appliance was sufficient. Held, that the court could not presume that the vice principal instructed the operator to continue the work, so as to make the master liable for the negligence of the vice principal in so doing.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 265.*]

4. MASTER AND SERVANT (§ 129*)—INJURY TO SERVANT—DEFECTIVE APPLIANCES.

A defect in some part of an appliance furnished to servants does not create a liability against the master unless the defect was the cause of an accident resulting in injury to a servant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 257–263; Dec. Dig. § 129.*]

5. MASTER AND SERVANT (§ 265*)—NEGLIGENCE—RES IPSA LOQUITUR.

The mere proof of an accident resulting in injury to a servant, though of an unusual character, does not destroy the presumption that the master has done his duty, and, while the happening of an accident may suggest the existence of a defect in appliances furnished, it does not alone give rise to a presumption of negligent failure to discover the defect seasonably, for, as a general rule, the doctrine of res ipsa loquitur is not applied in a case between master and servant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 881; Dec. Dig. § 265.*]

6. MASTER AND SERVANT (§ 286*)—INJURY TO SERVANT—DEFECTIVE APPLIANCES—EVIDENCE.

In an action for injuries to a servant alleged to have been caused by defective appliances, evidence held not sufficient to go to the jury on the issue of the master's negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1010–1050; Dec. Dig. § 286.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, Kings County.

Action by Harry C. Schlappendorf against the American Railway Traffic Company. From a judgment for plaintiff and from an order denying a new trial, defendant appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and HIRSCHBERG, THOMAS, CARR, and WOODWARD, JJ.

James J. Mahoney, for appellant.

Frederick N. Van Zandt, for respondent.

CARR, J.   The plaintiff has recovered judgment against his former master, the defendant, for the sum of $11,142.89 for personal injuries resulting from the alleged negligence of the master. The action was brought under the common-law rules of liability. The negligence asserted consisted of an alleged failure to furnish the plaintiff with reasonably safe appliances in doing the work in which he was injured.

The plaintiff was a young man of no particular experience, and his work for the defendant was practically that of an ordinary laborer. Before entering upon this employment, he had no acquaintance with its methods, and four days after the beginning of his service the accident occurred. The defendant was engaged in the business of gathering up and carrying away ashes and similar refuse material which accumulated from time to time in the borough of Brooklyn. As a part of its agencies it maintained a shed or depot fronting on a public street. Into this shed it ran cars laden with the refuse material. On the floor space of the shed, it had constructed 16 deep pockets separated from each other by lumber construction. These pockets were used to contain large steel buckets, of square construction, which, when either full or empty as the case may be, were lifted out of or deposited in the pockets by means of an overhead traveling crane, which was operated by an electric motor. By means of this crane a full or empty bucket was moved from one pocket to another as the needs of the work required. The buckets when full of ashes weighed from six to seven tons. On each side of the buckets, about four feet below the top, was a projecting lug. To move the bucket, a hook was attached to each lug. These hooks were in turn attached to a cable which fitted into a large hook attached to a pulley. Through this pulley passed a steel cable. One end of the cable was anchored permanently to a revolving drum, the other then passed through a clamp which affixed the cable to another part of the crane itself, and the free end of the cable emerging from the clamp was doubled back against the portion of the cable below the point of entry to the clamp, and both were tied together with two steel clips. The entire cable, thus constructed, formed a loop, in the bed of which the pulley rested as the buckets were being raised or lowered.

The accident happened while a full bucket was being lowered into a pocket. The plaintiff was standing by as the bucket had descended halfway into its pocket, and he was but a few inches away. As the bucket was descending, it appears to have come down slantingly.

Something happened to the overhead mechanism and the bucket fell, striking the plaintiff's feet as it descended and badly crushing them. After the accident it was found that the end of the cable passing through the clips, and the clamp, had become loose, thus releasing the descending bucket from the support of the loop which ordinarily passed through the pulley which held the main hook which was used to raise or lower. In other words, one end of the cable loop got loose and the loop ceased to be. The obvious cause of this happening was that the clamp and the lower clips failed to hold securely the parts of the cable which passed through them. Why this failure happened at this very time is not made clear by any direct evidence. The crane seems to have been of an approved type. The clamp appears to have been designed as sufficient in itself to secure the end of the cable which passed through it, and no lower clips were furnished by the manufacturers of the crane; similar cranes being operated safely without these lower clips. The clips in question were applied by the defendant as an additional precaution and factor of safety. Though there were two clips used, in addition to the clamp, the proof is that one clip, in itself, would have been sufficient to sustain the weight of the loaded bucket. The clips were locked to the cable by bolts and nuts, and the clamp was likewise locked to the crane.

The plaintiff's theory of the accident is that all these bolts and nuts had become loose, and the defect so arising could have been discovered by the master through reasonable inspection of the appliance. So far as the proof goes, the master maintained a system of inspection, and the very appliance in question was shown to have been inspected two days before the accident without any defect having been discovered. It is quite true that, had everything connected with the appliance been in good order at the time of the occurrence, the accident would not have happened, and this was so testified at the trial. The difficulty is that the defendant's liability does not rest upon the simple fact that something was out of order at the moment, but requires proof either of actual notice or of the existence of a condition which would result in notice if there had been reasonable inspection of the appliance on its part. The plaintiff offered proof to show that the master had actual knowledge that the appliance was out of order at least an hour before the happening of the accident, and was therefore guilty of negligence in continuing its use until a repair was made. It appears that on the morning of the accident the lowest of the clips on the clamp side of the cable was observed to be loose and to slip up and down on the cable as the crane was being used to move the buckets. This was first noticed by one of the laborers, who was a man of some experience in that work. He called the fact to the attention of one Plank, who operated the electric motor which controlled the hoisting appliance. Plank, after noticing the condition of this clip, telephoned to one Burns, an employé of the defendant in its main office, telling him about the clip in question. Burns is described as a "dispatcher," and it appears that he was the one who gave orders as to the arrival and departure of the cars which carried the material

to and from the depot in question. Notice to Burns is claimed by the plaintiff to have been notice to the defendant.

The case was submitted to the jury on the theory that Plank was a fellow servant, and that notice to him did not charge the defendant. It does not appear in the proof what directions Burns gave, if any, to Plank as to the further use of the crane; but Plank went on in the meantime as before, lifting some 14 filled buckets into and out of pockets until the accident happened. If the continued use of the crane in the meantime was negligence, whose negligence was it? Was it that of the master, or was it that of Plank, who was treated as a fellow servant? Assuming Burns to have been the alter ego of the defendant, the proof is silent as to what directions, if any, he gave to Plank as to the continued use of the crane, until some one came to make repairs. From the fact that Plank went on using the crane, the learned counsel for the respondent argues that Plank must have been so instructed by Burns. On this record, however, no presumption of this kind is permissible. Plank testified that he thought the clamp was sufficient in itself without the clips, and such an opinion on his part would sufficiently explain why he went on in the meantime using the crane after he telephoned Burns. For Plank's negligence the defendant was not liable, as at common law he was the plaintiff's fellow servant.

The foregoing discussion as to Plank's negligence assumes for the time being that the trouble with the lower clip was the cause of the accident. Unfortunately for the plaintiff, the actual cause of the accident is not shown. A defect in some part of the appliance would not create liability unless that particular defect itself was a cause of the accident. As far as the proofs go, the presence of these clips was not necessary to make the hoisting appliance reasonably safe. They appear to have been applied as a precaution to make the appliance more than ordinarily safe. They were put on the cable, not as a matter of ordinary care, but as a matter of extraordinary care. As the proofs are, the clamp alone would have been equal to the requirement of reasonable safety. If there was anything wrong as to the clamp and its bolts and nuts, the proofs are silent on that point. Perhaps the defendant could have explained where the real trouble lay, as one of its employés examined the appliance shortly after the accident. He was not called as a witness, however.

It seems obvious that, unless the rule of res ipsa loquitur applies, there was insufficient proof to send this case to the jury. It is argued by the respondent that the rule in question did apply to the circumstances of this case. The basis of this argument rests upon the assumption that, were the clamp and clips, or the clamp alone, in good order, the accident would not have occurred in the ordinary course of human experience.

The question of the application of this rule to an accident forming the basis of an action between master and servant is not without difficulty. While it would be going too far to say that the rule of res ipsa loquitur is never to be applied in a case between master and servant, it is quite true that it has been rarely so applied. As a general prin-

ciple of the law, in the absence of proof showing negligence, there is a presumption that the master has done his duty. The mere proof of an accident, even of an unusual character, does not destroy this presumption. The master is not liable simply because some part of an appliance has become out of order. It must have been out of order long enough to charge him with negligence in failing to discover it by proper inspection. While the happening of the accident may suggest the existence of a defect, it does not alone, in itself, give rise to a presumption of negligence in failing to discover the defect seasonably. Starer v. Stern, 100 App. Div. 393, 91 N. Y. Supp. 821; Stackpole v. Wray, 99 App. Div. 262, 90 N. Y. Supp. 1045; Welsh v. Cornell, 168 N. Y. 508, 61 N. E. 891; Dougherty v. Milliken, 163 N. Y. 527, 57 N. E. 757, 79 Am. St. Rep. 608; Rende v. N. Y. & Texas Steamship Co., 187 N. Y. 382, 80 N. E. 206; Henson v. Lehigh Valley R. R. Co., 194 N. Y. 205, 87 N. E. 85, 19 L. R. A. (N. S.) 790.

On the theory that the accident was caused by a loosening of the bolts in the clamp and both clips—and as to this there is no proof, except as to one clip—the plaintiff gave proof that in some of the uses of the crane in question there was a tendency on the part of the pulley to strike against the clips and thus transmit force of impact to the cable, which in turn was transmitted to the clamp, thereby causing a probable loosening of the bolts in the clamp, which would result finally in such a loosening of the clamp itself that it would not hold the cable which passed through it. Under these circumstances, it was claimed there arose a necessity for frequent inspection of this part of the appliance. Proper inspection would have discovered. the loosening of the bolts. From the fact that the bolts were loose at the time of the accident, it is contended that there was either no inspection or improper inspection. All of this argument assumes, necessarily, that the bolts of the clamp were in fact loose some considerable time before the accident. As to this there is no proof, however, and, unless this assumed fact can rest upon a presumption, it has no basis. It appeared from the proofs given by the plaintiff's witness Plank that there was frequent inspection of the appliances; one inspection being had a day or two before the accident.

It would appear, therefore, that there was not sufficient evidence to justify the submission to the jury of the 'question of the defendant's negligence.

The judgment and order should be reversed, and a new trial granted; costs to abide the event. All concur.