## BRADY v. CITY OF NEW YORK et al.

### DI CRESCENTI v. SAME.

(Supreme Court, Appellate Division, Second Department.    March 15, 1912.)

1. MUNICIPAL CORPORATIONS (§ 819*)—INJURIES TO PERSON ON SIDEWALK—NEGLIGENCE—RES IPSA LOQUITUR.

Proof that a child on a sidewalk was killed by the sidewalk falling into an excavation in the street dug by a contractor of the city prima facie established, under the rule of res ipsa loquitur, the liability of the city and the contractor co-operating with the city in the work, and to escape liability they must prove freedom from negligence.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1739–1743; Dec. Dig. § 819.*]

2. MUNICIPAL CORPORATIONS (§ 819*)—INJURIES TO PERSON ON SIDEWALK—NEGLIGENCE—QUESTIONS FOR JURY.

In an action for the death of a child on a sidewalk, caused by the sidewalk falling into an excavation in the street dug by a contractor of the city, evidence *held* to justify a finding of negligence in failing to properly timber the excavation.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1739–1743; Dec. Dig. § 819.*]

3. MUNICIPAL CORPORATIONS (§ 819*)—INJURIES TO PERSON ON SIDEWALK—NEGLIGENCE—QUESTIONS FOR JURY.

A sidewalk on which a child stood fell into an excavation in the street, killing the child. There was evidence that a gas explosion caused the accident. The gas pipes were, in the progress of the work, hung on supports placed at intervals and in proximity to electric wires similarly removed from the ground covering and support. At the time of the accident there was a noise like an explosion and flames followed. *Held* to justify a finding of actionable negligence on the part of the contractor in failing to properly protect the pipes.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1739–1743; Dec. Dig. § 819.*]

4. MUNICIPAL CORPORATIONS (§ 751*)—EXCAVATIONS IN STREET—LIABILITY.

A city, employing a contractor to make an excavation in a street with proper protection for the public, is not relieved from the liability of keeping the surface of the street and sidewalks, so far as use of them is permitted, reasonably safe; but the city need not watch each detail of the work.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1580–1582; Dec. Dig. § 751.*]

5. APPEAL AND ERROR (§ 987*)—WEIGHT OF EVIDENCE.

The court, on appeal from a judgment of dismissal and from an order denying a new trial, may not consider the weight of the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3893–3896; Dec. Dig. § 987.*]

6. MASTER AND SERVANT (§ 278*)—INJURY TO SERVANT—NEGLIGENCE—EVIDENCE.

Proof that a servant of a contractor of a city making an excavation in a street, employed to line a sewer in a place prepared for him by the excavation, was injured by a caving in of the excavation caused by an explosion of gas from pipes in the excavation or by defective timbers, did not, under the rule of res ipsa loquitur, establish the actionable negligence of the contractor, though the servant was entitled to have due preparation

*For other cases see same topic & § NUMBER in Dec. &·Am. Digs. 1907 to date, & Rep'r Indexes
        134 N.Y.S.—20

for his work in the support and inspection of the pipes and the maintenance of suitable timbers.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954–972, 977; Dec. Dig. § 278.*]

**7. MUNICIPAL CORPORATIONS (§ 821*)—DEFECTIVE STREETS—LIABILITY—EVIDENCE—QUESTION FOR JURY.**

In an action against a city and its contractor to dig an excavation in a street, for the death of a child on a sidewalk, caused by the falling of the sidewalk into the excavation, by reason of the explosion of gas in pipes in the excavation, or by defective timbers therein, *held*, that the question of the negligence of the city was for the jury.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1745–1757; Dec. Dig. § 821.*]

Jenks, P. J., and Thomas, J., dissenting in part.

Appeal from Trial Term, Kings County.

Actions by Jennie Brady as administratrix of John C. Brady, deceased, and by Giuseppe Di Crescenti, as administrator, against the City of New York and others. From judgments for defendants, and from orders denying motions for new trial, plaintiffs appeal. Reversed and remanded.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and WOODWARD, JJ.

William H. Griffin (Martin T. Manton, on the brief), for appellants.

James D. Bell (Frank Julian Price, on the brief), for respondent City of New York.

Frank Verner Johnson, for respondents Rodgers & Hagerty.

THOMAS, J. The appellants, dismissed when they rested at the trial, severally representatives of two persons killed, one a child playing on the street and the other a workman in an excavation for a sewer in the street, charged culpable negligence against the city of New York and Rodgers & Hagerty, its contractors to make the sewer, as well as the Brooklyn Union Gas Company, whose pipes were suspended in the excavation, but against whom the appeal unquestionably fails. The excavation in Gold street, in width 18 feet, occupied most of the roadway, while its depth was from 45 to 47 feet, and its length some 135 feet. Its sides were sheathed, and at intervals of 5½ feet for its entire length cross-braces, some 10 inches square, rose with intervening spaces 9 or 10 feet. From beams on the surface of the excavation were suspended the lines of gas pipes and electric wires. As the work advanced, the completed portion of the excavation, so far as convenient, was filled, and the beams that interfered with the advancing work were removed, as this enabled a form in use to be pushed forward. At the time of the accident the men had, through a distance of some 60 feet, removed beams two tiers from the bottom of the sewer, when the timbering before or after an explosion fell in, and the land adjacent to the excavation, including portions of the sidewalk, was drawn in for its entire length. The respondents' position, as understood, is that no cause of action in favor of either plain-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tiff is proved against anybody, inasmuch as the cause of the ruin is not known.

[1] The child, whose case is first considered, in rightful use of the street, was killed because the sidewalk on which he stood was drawn into the excavation. Such an engulfment is so abnormal that the persons responsible for the excavation and the appropriation of the street therefor should make proof of such care as would meet the presumption of negligence raised by the ruinous invasion of the public way. When sidewalks so disappear, due lateral support against the excavation is obviously absent, and whoever is shown to have been responsible for the work should explain why what the law requires to be done for such support was not afforded. Hence, when the plaintiff Brady showed the happening, the city primarily, and any one co-operating with it in the work, were put to proof. But the plaintiff made more proof, and what more she made, as it is claimed by the respondents, leaves the plaintiff's case unproved.

[2] So the next inquiry is whether the presumption of negligence is lost by the evidence received. The uncontradicted facts leave the Gas Company without fault. What, then, of the city and its contractors? The contractors are shown to have shored efficiently the sides of the excavation until the time in question. What, then, caused the fall? It was either the explosion of gas, the removal of too many timbers, or the removal of too many timbers in conjunction with defective timbers left. It was a question of fact whether the cause was explosion or defective operation and material. There is much evidence from which a jury, in case of submission to it, could justly find that the timbers first gave way and carried with them the pipes and electric wires. If the falling of the timbers was the proximate cause, then the evidence of the timbers removed and the weakened condition of some of the timbers left, by reason of holes and rottenness, if such the jury found to be the case, strengthens the presumption of negligence, and even in the absence of such presumption, based upon the rule of res ipsa loquitur, would have justified the jury in finding that the persons responsible for the care of the place were negligent.

[3] But what if the jury found that the explosion was the proximate cause? Would the rule res ipsa loquitur apply, so as to require proof of due care to counteract the presumption? Explosion on private property was not deemed prima facie evidence of negligence as to persons injured without its limits (Cosulich v. Standard Oil Co., 122 N. Y. 118, 25 N. E. 259, 19 Am. St. Rep. 475); and it may be that if gas pipes, as usually laid, exploded, such holding would apply even as to persons injured on the street. But here it is shown that the gas pipes were removed from a uniform and solid support in the earth and hung on supports placed at intervals and in proximity to electric wires similarly removed from ground covering and support, and that there was a noise like an explosion, which flames of fire followed. That state of facts would, in absence of explanation, permit the inference that what was imbedded and so protected had been exposed to possible bending or breakage at the joints, or had been

uncovered so as to permit gas to leak into the air in case the disturbed pipes were defective, and that, too, in the neighborhood of electric mains. Such facts, joined to an explosion, would be sufficient evidence of negligence in the case of injury to a person on the street, and demand evidence of requisite care on the part of responsible parties. The streets are made for the people, and it would be an intolerable burden, in the case of a sidewalk undermined by explosion of pipes and wires hung on temporary supports, to compel the injured or the survivors of the dead to explain, after examination of the wreck and débris, what the support was and why the maintenance was defective. The actors knew the facts, and should give evidence that no fault of their own caused the upheaval. But it is not necessary to state in this case that the mere explosion is sufficient, inasmuch as such explosion, in association with such facts as I have detailed, if the jury found them to exist, made such prima facie case of negligence as to require proof of due care in the support of the pipes and inspection of their condition.

[4] But does the foregoing apply against the city as well as its contractors? It applies to the contractors, for what was done they did, and if the nature of the work required something omitted, it was their duty to supply it. The contract between them does not appear, but it is inferable that, as the contractors undertook to do the work, they assumed to do it in a proper way and with proper protections. The work was lawful, it was not inherently dangerous, nor did the injury result essentially from the nature of the work, but from the method of doing it. But the city was not relieved of care that the surface of the street and sidewalks, so far as use of them was permitted, be kept reasonably safe; nor do I consider that the city could entirely shut its eyes to the way the work was carried on, but rather that some fair ascertainment and inspection of methods and conditions should accompany the work. This duty, it may be assumed, was done as to the method of shoring adopted, which had to the time proved sufficient. But it could not be fairly expected that the city would watch each detail of the work—for instance, the removal of beams from time to time as the work advanced. There is evidence of defective beams, rotten in places; but the proof in that regard is not sufficient to show negligence on the part of the city in inspection. That would require a minute examination of material and operation that would place far too great burden upon a municipality in its relation to an independent contractor in a work like the present one.

The city has a duty respecting obstructions in the street, and, as I consider, it cannot excavate or undermine streets, or delegate the power to others to do so, regardless of the intrinsic danger, or danger arising from the nature of the work, or from the general methods of doing the work; but it is not required to inspect timbers stick by stick, or follow operatives as they erect or remove them, nor, if the general method of supporting gas pipes and wires is not proven negligent, is it obliged primarily to keep up such a system of inspection as would make it liable upon proof of explosion of gas. The con-

tractors are the persons in immediate charge, and the explanation rests upon them to show that they did what requisite prudence required. Therefore no liability on its part is proven, or evidence thereof adduced, in either the Brady or the Di Crescenti Case.

[5] But in the Brady Case the issue as regards the contractor should have been left to the jury, in that (1) the engulfment of the sidewalk under the facts proven raised a presumption of negligence, and this is so whether it was caused initially by the fall of the timbers or the explosion; (2) because the evidence of the removal of the timbers, and the condition of some of those left, was sufficient to require the submission of the contractor's negligence to the jury. This court at this time may not consider the weight of the evidence. Hence discussion of the credibility of the witnesses for the plaintiff is inopportune.

[6] Thus far the question of the submission of the contractor's liability to the jury has related to the case of the person on the street. Is the case of the servant different? Should the court charge the jury that the falling in of the excavation raises as to the servant a presumption of negligence? It may be noticed that the servant was not making a safe place less safe, or subjecting it to increased danger, but was, as a concrete man, lining a sewer in a place prepared for him by excavation, and was entitled to have due preparation for his work by the master in the support and inspection of the pipes and the maintenance of the suitable timbers. Kranz v. Long Island R. Co., 123 N. Y. 1, 25 N. E. 206, 20 Am. St. Rep. 716; Schmidt v. Gillen, 41 App. Div. 302, 58 N. Y. Supp. 458. But the fall itself did not declare negligence, as it was not a structure like a trestle carrying a permanent tramway, considered in Ristau v. Coe Co., 120 App. Div. 478, 104 N. Y. Supp. 1059, affirmed 193 N. Y. 630, 86 N. E. 1132. It was not an appliance like a scaffold, the fall of which in itself has long been regarded sufficient evidence of negligence (Stewart v. Ferguson, 164 N. Y. 553, 58 N. E. 662; Solarz v. Manhattan R. Co., 8 Misc. Rep. 656, 29 N. Y. Supp. 1123, affirmed 155 N. Y. 645, 49 N. E. 1104), even though a plank from it fell upon a servant (Iesief v. N. Y. Central & H. R. R. R. Co., 102 App. Div. 168, 92 N. Y. Supp. 342). It does not suggest negligence, as did the ledge on the edge of a deep place used as a way in a mine and giving way under a servant (Lentino v. Port Henry Iron Ore Co., 71 App. Div. 466, 75 N. Y. Supp. 755), or the falling roof on which servants were privileged to walk (Muhlens v. Obermeyer & Liebmann, 83 App. Div. 88, 82 N. Y. Supp. 527). The rule of res ipsa loquitur was early applied to persons injured in the street from objects falling therein upon travelers, as in Mullen v. St. John, 57 N. Y. 567, 15 Am. Rep. 530, which was followed by Volkmar v. Manhattan R. Co., 134 N. Y. 418, 31 N. E. 870, 30 Am. St. Rep. 678; and the doctrine was also applied where the injured person was necessarily passive, and the highest practicable care was required of one transporting him, maybe by a highly dangerous agency, as in Curtis v. Rochester & Syracuse Railroad Co., 18 N. Y. 534, 75 Am. Dec. 258, Edgerton v. N. Y. & H. R. R. Co., 39 N. Y. 227, and Seybolt v. N. Y., L. E. & W. R. R. Co.,

95 N. Y. 562, 568, 47 Am. Rep. 75. But the spread of the rule was arrested in Cosulich v. Standard Oil Co., supra, where an explosion of oil on defendant's premises did injury on adjacent premises. Since that time the rule has been applied to persons standing in other relations, as in the case of the falling of an elevator in a building and injuring passenger. Griffen v. Manice, 166 N. Y. 188, 59 N. E. 925, 52 L. R. A. 922, 82 Am. St. Rep. 630. Yet, save as above noticed, it has been usually denied in cases between master and servant (Starer v. Stern, 100 App. Div. 393, 91 N. Y. Supp. 821; Stackpole v. Wray, 99 App. Div. 262, 90 N. Y. Supp. 1045), where, in each case, a servant was injured by the falling of a freight elevator; in Rende v. N. Y. & Texas S. S. Co., 187 N. Y. 382, 80 N. E. 206, where an iron shutter fell on one coaling a ship; in Dougherty v. Milliken, 163 N. Y. 527, 532, 57 N. E. 757, 79 Am. St. Rep. 608, where an eyebolt breaking let a derrick fall; in Schlappendorf v. American Railway Traffic Co., 142 App. Div. 554, 127 N. Y. Supp. 44, where bucket fell from loosening of clamps that held a cable; in Lawson v. Merrall, 69 Hun, 278, 23 N. Y. Supp. 560, where a clamp of an elevator broke and fell; in Dobbins v. Brown, 119 N. Y. 188, 23 N. E. 537, where a bucket holding servants fell while descending into a mine; and in May v. Berlin Iron Bridge Co., 43 App. Div. 569, 60 N. Y. Supp. 550, where roof trusses in the course of construction fell.

Other instances could be given, where the rule has and has not been applied; but the above indicates that the present happening does not raise the presumption of negligence in the case of the servant. Nor should any attempt be made to state a rule or rules for the application of the doctrine. The spirit of it may be gathered from the opinion in Griffen v. Manice, supra. In a particular case, where the nature of the event would not permit the use of the rule, such event, with added facts indicating a cause, may justify a presumption of negligence. But in the present case the state of facts which the plaintiffs' evidence tends to prove does not raise the presumption, but does require that there be a submission to the jury to determine (1) whether the timbering left in use to shore the excavation was so weak and defective from holes and decay as to permit the sides to fall after the removal of sufficient shoring to permit the work to progress; (2) if so, whether the contractors were negligent in that regard; (3) whether such neglect was the cause of the injury. But, assume that the jury find that the accident arose from explosion from the escape of gas; that fact itself would not be sufficient evidence of negligence. The plaintiff must show neglect of the master, whereby gas escaped. Such proof is not in the present record.

The judgments and orders should be reversed as to defendant Rodgers & Hagerty, and new trials granted, costs to abide the event, and as to the other respondents affirmed, with costs.

In Brady v. City of New York et al.: Judgment entered May 8, 1911, and order denying motion for new trial, reversed, and new trial granted, costs to abide the event. Judgment entered May 5, 1911, and order denying motion for new trial, reversed as to defendant the city of New York, and new trial granted, costs to abide the event, and affirmed as to defendant Brooklyn Union Gas Company, without costs. BURR and WOODWARD, JJ., concur.

THOMAS, J., reads for affirmance as to the judgment entered May 5, 1911, and the order denying motion for a new trial, with whom JENKS, P. J., concurs, and for reversal of judgment entered May 8, 1911, with whom JENKS, P. J., and BURR, CARR, and WOODWARD, JJ., concur.

In Di Crescenti v. City of New York et al.: Judgments and order reversed and new trial granted, costs to abide the event, as to the defendants Rodgers and Hagerty, and unanimously affirmed, with costs, as to the defendant the city of New York. JENKS, P. J., and BURR, CARR, and WOODWARD, JJ., concur.

CARR, J. [7] While I concur with THOMAS, J., that the judgment and order should be reversed as to the defendant Rodgers & Hagerty, it seems to me that the judgment and order should be reversed likewise as to the city of New York, on the ground that it was a question for the jury whether the city of New York had, under the circumstances, shown reasonable care and diligence in the maintenance of the street surface during the progress of the sewer construction.