(159 App. Div. 688)

### WETSELL v. REILLY et al.

(Supreme Court, Appellate Division, Second Department. December 31, 1913.)

1. EXPLOSIVES (§ 8*)—DEATH OF PEDESTRIAN—INSTRUCTIONS—EVIDENCE.

Where, in an action against a sewer contractor for the death of a pedestrian from an explosion, there was no evidence of the cause of the explosion other than that a shanty under defendants' control and in which an employé had lighted a fire was blown to pieces, it was error to instruct that it was incumbent upon defendants to explain the circumstances of the explosion; the doctrine of res ipsa loquitur not applying to the mere physical fact of the explosion.

[Ed. Note.—For other cases, see Explosives, Cent. Dig. §§ 4, 5; Dec. Dig. § 8.*]

2. NEGLIGENCE (§ 121*)—"RES IPSA LOQUITUR"—APPLICATION OF MAXIM.

Under the doctrine of "res ipsa loquitur," the circumstances of an accident become evidence of defendants' negligence, but do not cause the burden of proof to shift or exempt the plaintiff from the burden of proving negligence, or circumstances making negligence a legitimate inference.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 217–220, 224–228, 271; Dec. Dig. § 121.*

For other definitions, see Words and Phrases, vol. 7, pp. 6136–6139; vol. 8, p. 7787.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3. EXPLOSIVES (§ 8\*)—RES IPSA LOQUITUR—APPLICATION OF DOCTRINE.**

Where, in an action for the death of a pedestrian from an explosion, there was no evidence that defendants had any dynamite at the shanty where the explosion occurred, but the proof showed the contrary, and it appeared that the shanty was unlocked and not under defendants' exclusive control, the doctrine of res ipsa loquitur had no application.

[Ed. Note.—For other cases, see Explosives, Cent. Dig. §§ 4, 5; Dec. Dig. § 8.\*]

**4. NUISANCE (§ 3\*)—LIABILITY—DEATH OF PEDESTRIAN.**

Where, in an action against a sewer contractor for the death of a pedestrian from a dynamite explosion, the evidence shows a causal relation between dynamite kept by defendant and the explosion, and defendant has kept the dynamite in violation of a city permit or kept it negligently and improvidently, he may be held liable for the maintenance of a nuisance.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. §§ 4, 5, 9–25; Dec. Dig. § 3.\*]

Appeal from Trial Term, Kings County.

Action by Josephine Wetsell, as administratrix, etc., against Thomas A. Reilly and another. From judgment for plaintiff and denial of new trial, defendants appeal. Reversed, and new trial granted.

Argued before JENKS, P. J., and THOMAS, CARR, STAPLETON, and PUTNAM, JJ.

Woolsey A. Shepard, of New York City, for appellants.

Sterling Pierson, of Brooklyn, for respondent.

JENKS, P. J. The defendant T. Reilly was a contractor at work on a sewer in West Seventy-Second street near Columbus avenue, New York City. The other defendant, P. Reilly, is the father of T. Reilly and was his servant. T. Reilly maintained a shanty on the surface of the street incidental to this work. About 7:20 a. m. of November 23, 1911, P. Reilly lighted a fire in the shanty where there was a stove, and then walked down the street to talk with his son and to show the men what to do. Smoke was seen coming out of the top and through the cracks of the shanty, and quickly an explosion followed which blew the shanty to pieces and broke all the glass for a city block. The explosion occurred within half an hour of the lighting of the fire. The plaintiff's intestate, a traveler in the street, was killed. The theory of the plaintiff is that the explosion was caused by dynamite which T. Reilly on that day kept for use in or about that shanty, and a complaint is that the explosion and the death were due to the negligence, and the careless and unlawful acts, of the defendants. The fact of an explosion was admitted, but the defendants joined issue on the other material allegations. The jury found for the plaintiff, and the defendants appeal.

[1] I think that the judgment must be reversed for an error in an instruction to the jury. The case was tried and was submitted only on the theory of negligence. At the close of the main charge either counsel made several requests for further instructions. And in response the court charged that the mere fact that the intestate was killed by the explosion did not entitle the plaintiff to a verdict, unless the jury

was satisfied by proof of the negligence of the defendants that there was no presumption of negligence or fault in the defendants from the mere happening of the accident, unless certain facts were sufficient to show negligence, and it refused to charge that there was no evidence of defendants' negligence, with comment that it would leave that as a question of fact for the jury, and with like comment it refused to charge in effect upon the facts of the case that the presumption of negligence arose from the mere happening of an accident of this character.

Thereupon the plaintiff's counsel asked for this instruction:

"The defendant in this case, having shown that there was an explosion in a shanty under his control, was called upon to explain the happening, and if he failed to explain it the presumption still remains."

And the court said:

"In connection with the testimony in this case as shown, I charge you that, after those facts were shown, then it was incumbent upon the defendants to explain the same."

Exception was taken. These were the last words of the court to the jury upon a subject which had just been sharply presented by the previous requests. The words were plain and specific, and the jury might well take them as the final expression of the court. And so, when the jury came to deliberation, it could well believe that the court had told it that as matter of law the plaintiff had made out a prima facie case of the defendants' negligence, and that inquiry was confined to the question whether the defendants had explained the accident, and, if not, the verdict must go against them. And if it did so believe, the defendants were in a far worse plight before the jury than if the court had told it that, although the burden of proof as to negligence was upon the plaintiff and could not shift, yet the explosion and its attendant circumstances were of such a character in themselves as might justify an inference of negligence, and that if the jury drew such inference the jury should inquire whether the defendants had gone forward with proof which exonerated them.

Was such an instruction justified by the case at its close? The circumstances relied upon by the plaintiff were, of course, rebuttable (Shearman & Redfield on Negligence [Street's 6th Ed.] § 58a), and therefore I shall consider all of the evidence. The explosion is admitted. But the maxim "res ipsa loquitur" does not apply to that mere physical fact.

[2] In Griffen v. Manice, 166 N. Y. at 193, 59 N. E. at 926, 52 L. R. A. 922, 82 Am. St. Rep. 630, Cullen, J., quotes with approval the language of Shearman & Redfield on Negligence, § 59, as follows:

"It is not that, in any case, negligence can be assumed from the mere fact of an accident and an injury; but in these cases the surrounding circumstances which are necessarily brought into view by showing how the accident occurred contain, without further proof, sufficient evidence of the defendant's duty and of his neglect to perform it. The fact of the casualty and the attendant circumstances may themselves furnish all the proof of negligence that the injured person is able to offer, or that it is necessary to offer."

See, too, Cosulich v. S. O. Co., 122 N. Y. 118, 25 N. E. 259, 19 Am. St. Rep. 475; Losee v. Buchanan, 51 N. Y. 476, 10 Am. Rep. 623;

Thompson's Com. on the Law of Negligence, § 7686, and cases cited; Thomas on Negligence (2d Ed.) vol. 2, p. 1108, and cases cited; Beven on Negligence, p. 120; Kirby v. D. & H. C. Co., 20 App. Div. 473, 46 N. Y. Supp. 777; Kinney v. Koopmann, 116 Ala. 310, 22 South. 593, 37 L. R. A. 497, 67 Am. St. Rep. 119. The meaning of the maxim is that the thing is evidence of the negligence of the defendant. Cunningham v. Dady, 191 N. Y. 152, 83 N. E. 689.

There are two considerations to be borne in mind in discussion of the evidence: First, even if the maxim applies in a given case, the burden of proof is not shifted. Cunningham v. Dady, supra. Second, although Griffen v. Manice in effect denies the limitation of the maxim to contract relations (see Brady v. City of New York, 149 App. Div. 816, 134 N. Y. Supp. 305), yet when there is not such a relation there must be "actually shown such facts and circumstances, in the nature of the defendant's undertaking and of the accident itself, from which the jury are able, if not compelled, to draw the inference of negligence. It was not intended that it should exempt the plaintiff from the burden of proving, affirmatively, negligence, or circumstances making negligence a legitimate, if not an irresistible, inference." Duhme v. Hamburg-American Packet Co., 184 N. Y. at 409, 77 N. E. at 388, 112 Am. St. Rep. 615, per Gray, J.

[3] The cause of the explosion, so far as direct proof is concerned, is a mystery. There was no proof that there was dynamite (or indeed any explosive) ever in the shanty, much less proof that the defendant ever put or kept dynamite therein. Consequently the contention that the explosion was caused by dynamite rests on inference. The proof relied upon for the inference is the violence of the explosion, the testimony of defendant P. Reilly, when called by the plaintiff, that he believed "the force of dynamite was downwards," the testimony of an inspector of combustibles that the floor of the shanty was broken where the stove used to rest, and the fact that the defendants had dynamite in their possession at this time for use in their work. But, of course, there could be other causes for such an explosion, though none is suggested, and therefore it was not necessarily attributable to dynamite; and the testimony of P. Reilly quoted is merely descriptive and not intended as probative that there was dynamite in the shanty, because he had just testified that he could not tell what exploded, and afterwards, when called by the defendant, he testified that no dynamite had ever been placed in the shanty at any time. And the testimony of the inspector is that the shanty was blown all to pieces—an indication that the force was spent in other directions. The contention that the explosion was caused by dynamite put or kept or suffered to be put or kept in the shanty by the defendants rests upon inference. The proof relied upon for such inference was that the defendant T. Reilly had dynamite in his possession for use; that the morning was pretty cool; that the dynamite found by the inspector of combustibles after the accident in the magazine of T. Reilly was frozen; that the defendants generally thawed out dynamite before use; that the sewer inspector saw, at or after 9 a. m., about five holes drilled ready for blasting; that the defendant P. Reilly, who lighted the fire in the stove, had

charge of the dynamite; and that the defendant T. Reilly had used a little dynamite the day before in his work. But there is proof that the dynamite used by the defendant T. Reilly was kept in his magazine under lock and key in exclusive charge of P. Reilly, who alone had access, and that there was an inspection daily by an inspector and by the fire department; that the magazine was about 150 to 200 feet distant from the shanty; that it was not opened on the day of the accident; and that the dynamite used on the day previous had been taken directly from the magazine to the work. The shanty was maintained by the defendants to house a watchman at night, for the convenience of the inspector by day, and was used to store tools, pails, ropes, and the like. The workmen changed their clothes there and left their workday clothes and rubber boots therein over night, and ate their food therein on wet days. It was on the surface of the street, unlocked on the morning of the explosion, and any one could open it.

I may comment here that the maxim res ipsa loquitur in part rests upon the consideration that the management and control of the thing that produced the injury—which in this case was charged to be the dynamite in the shanty—is exclusively in the defendant, on the theory that therefore he can produce evidence of the actual cause, while the plaintiff cannot. Griffen v. Manice, supra. And finally there was the positive testimony by the defendants, who were actually about the work, that no dynamite was ever placed by them, or taken by them or under their authority or by their consent, in that shanty. Of course, the question of the credibility of the proof was for the jury; but this proposition involves the corollary that the court was not entitled to pass upon credibility as incidental to its determination as to whether there was a prima facie case, subject of course to its right to disregard testimony that was on its face contradictory to physical laws or was contrary to all common sense or was patently false.

I think that it cannot be said that the proof placed the plaintiff beyond the province of the jury so that the defendants were not entitled to have the jury consider whether the plaintiff had made out her case before the jury came to the question of their negligence. In fine, the charge was tantamount to saying to the jury: The court submits this case to you to determine the liability of the defendants for negligence, with the peremptory instruction that the proof is sufficient to require the defendants to explain this accident, and not that the proof is sufficient to justify your determination that it required the defendants to go forward with proof in explanation. I think that the instruction is not justified by the case.

It is true that the defendants did not even attempt to explain. The accident in itself made such a task difficult if not impossible. For the "res"—the thing—occurred in a vacant shanty. And the "res" was self-destructive. There is no positive proof of the cause of the explosion. The plaintiff undertook to prove it by inferences. The defendants made denial of the truth of the plaintiff's conclusions in so far as they involved the defendants, and gave proof relevant to the facts relied upon by the plaintiff, which proof was directed against her inferences. If dynamite was in the shanty, it is possible and not unrea-

sonable that some person other than the defendants or their servants had placed it there. Such an act naturally would have been one of stealth, whether the motive was mischief or jealousy of the defendants or some employé, or revenge or spite. Acts of similar character are not unknown in the business world. Or it was possible that some workman who had left his apparel in the shanty had temporarily hidden some explosive in his garments. which was detonated by the fire. I admit that this is but pure conjecture, but it goes to the strength of the inference that if any dynamite was in that shanty. it was chargeable to the defendants. And, finally, it must be remembered that, if the plaintiff was not under the same disability as the defendants in respect to the proof, she was destitute of any direct proof and dependent on circumstantial evidence—a condition that is not without weight (Cunningham v. Dady, supra, 191 N. Y. at page 156, 83 N. E. 689)—and that hers was the burden of bringing negligence home to the defendants, even if the maxim of res ipsa loquitur obtained.

The learned counsel for the respondent cites our decision in Miller v. Uvalde A. P. Co., 134 App. Div. 212, 118 N. Y. Supp. 885; but the discussion of the maxim "res ipsa" in that case refers to the right of the jury to attribute an accident to a specific cause upon circumstantial evidence, even though surmise or conjecture might otherwise account for it; while the question in this case is as to the right of the court to instruct the jury peremptorily.

[4] As I have said, the case was tried upon the theory of negligence. The plaintiff also pleaded that the defendant used and kept dynamite in violation of the ordinances of the city and the laws of the state. This allegation was denied by the defendant, who, without plea, testified without objection that he "had a permit for the handling of the dynamite on this job," and who offered a permit therefor in evidence, also without objection. If there was a causal relation between the dynamite kept by the defendant and the explosion shown by proof the defendant might be liable for the maintenance of a nuisance, if it were. shown either that the permit had been violated or that the dynamite had been negligently or improvidently kept. People v. Sands, 1 Johns. 78, 3 Am. Dec. 296, particularly the opinion of Kent, Ch. J.; Kinney v. Koopmann, supra; Murphy v. City of New York, 128 App. Div. 463, 112 N. Y. Supp. 807. The opinion in Kinney v. Koopmann, supra, is almost a treatise upon the subject. Or even liability might be established within the principles of Heeg v. Licht, 80 N. Y. 579, 36 Am. Rep. 654; Prussak v. Hutton, 30 App. Div. 66, 51 N. Y. Supp. 761.

The judgment should be reversed, and a new trial be granted; costs to abide the event.

CARR, STAPLETON, and PUTNAM, JJ., concur. THOMAS, J., votes to affirm as to the defendant Thomas A. Reilly, with costs, and to dismiss the complaint as to the defendant Patrick Reilly, without costs.