(173 App. Div. 752)

PEOPLE v. PEASE & ELLIMAN, Inc.

(Supreme Court, Appellate Division, First Department.   July 10, 1916.)

HEALTH ⬦═37—DANGEROUS BUILDINGS—FIRE ESCAPES—"OWNER."

   Under Labor Law, § 79b, as added by Laws 1913, c. 461, providing that
no factory be conducted in any building of more than two stories in
height unless it has on each floor at least two fire escapes, and under
section 94 (Consol. Laws, c. 31) providing that the owner shall be punisha-
ble for the nonobservance of the provisions of section 79b, and defining
the term "owner" as the owner of the freehold, the lessee, or the agent
in charge of the property, *held*, that an agent, having charge of the prop-
erty only to the extent of collecting rents and negotiating and making
minor repairs, and without authority to execute leases or make extensive
repairs or alterations, is punishable for violation of section 79b.

   [Ed. Note.—For other cases, see Health, Dec. Dig. ⬦═37.

   For other definitions, see Words and Phrases, First and Second Series,
Owner.]

   Scott and Dowling, JJ., dissenting.

Appeal from Court of Special Sessions, New York County.

Pease & Elliman, Incorporated, were convicted of a violation of the
Labor Law, a misdemeanor, and they appeal.  Affirmed.

Argued before CLARKE, P. J., and McLAUGHLIN, SCOTT,
DOWLING, and DAVIS, JJ.

Alfred H. Holbrook, of New York City, for appellant.
Robert S. Johnstone, of New York City, for the People.


McLAUGHLIN, J.  The defendant appeals from a judgment of
Special Sessions, convicting it of a violation of the Labor Law in con-
nection with a building at 434–438 Broadway, city of New York.

Section 79b of the Labor Law provides in part that no factory shall
be conducted in any building theretofore erected unless such building,
if over two stories in height, shall be provided on each floor with
at least two means of exit or escape from fire, of the character describ-
ed in the section.  The building in question was nine stories in height;
and while no proof was offered that it was erected prior to the enact-
ment of section 79b, that fact sufficiently appears from the defend-
ant's admissions, shown at the trial, that the building was subject to
the requirements of the section.  Proof was given, and it is not dis-
puted, that a factory was being conducted in the building, and that
the building did not comply with the requirements of the section in
November, 1915, at the time of the offense charged.  The Labor Law
was therefore being violated; and the only question presented by this
appeal is whether the defendant, which did not own the building,
could be held responsible for the violation, and punished, under sec-
tion 1275 of the Penal Law (Consol. Laws, c. 40), which provides that
any person who violates or does not comply with any provision of the
Labor Law is guilty of a misdemeanor.

The conviction of the defendant was based entirely upon section
94 of the Labor Law.  That section provides that the owner shall be

⬦═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

responsible for the observance and punishable for the nonobservance of the provisions of section 79b, and that:

"The term 'owner' as used in this article shall be construed to mean the owner or owners of the freehold of the premises, or the lessee or joint lessees of the whole thereof, or his, her or their *agent in charge of the property.*"

The defendant was conceded to have been the agent in charge of the property, to the extent of collecting rents and negotiating and making minor repairs. But it had no authority to execute leases, nor to make such repairs or alterations as would have been necessary to make the building conform to the requirements of section 79b. The claim is accordingly made that the defendant was not the agent in charge of the property, within the meaning of the statute, and that, if it were, the statute is unconstitutional as applied to it.

The italicized words have not been construed in any case that has been cited to us, except People v. Pullman, 166 App. Div. 99, 151 N. Y. Supp. 741; and that case is of little help, since it was decided upon another point, and the question here presented was barely mentioned. That the defendant in the present case was the agent in charge of the property, in the sense in which those words are used in the statute, can hardly be disputed. This was illustrated at the trial, when one of its managers, in answer to a question whether the defendant was in charge of the property at the time for the owner, replied that it was. And when the purpose of the statute is considered, it seems to me that the meaning ordinarily given to those words was unquestionably the meaning intended.

In a large city like New York, the owner of a building similar to the one in question rarely, if ever, resides in it and seldom personally undertakes its management. In the great majority of cases, the building is placed in the hands of an agent, to whom applications for renting space are made, and who conducts all dealings with the tenants. The owner may be, and frequently is, a nonresident, not subject to the jurisdiction of our courts. But the agent is necessarily familiar with the conditions existing in the building and available for complaints in connection therewith. In making the agent in charge of the property responsible for the observance of the provisions of the Labor Law, therefore, I think that the Legislature had in mind the person who secured the tenants and to whom complaints respecting the building would naturally be made.

The defendant was such an agent. Notice of the violation in question was served upon it in April, 1915, by the bureau of inspection of the department of labor, and it at once took up with the owner the question of making the necessary alterations. It had on prior occasions complied with similar orders relating to minor details; but it had no authority from the owner to make such extensive alterations, and, for reasons which it is unnecessary to discuss, the alterations were not made, and the violation was allowed to continue for several months.

I do not think that the fact that an agent for a building, like the defendant in the case at bar, may not have authority to make the required alterations is by any means decisive of the question. Section

79b does not provide that every tenant factory shall be equipped with the two described means of exit on each floor. It provides only that no factory shall be conducted in any building *unless* the two means of exit shall be provided. It is not the failure to equip the building in the prescribed manner that violates the law; it is the maintenance of a factory in a building not properly equipped; and the violation can be terminated either by altering the building or by discontinuing the factory. Under section 94, both the actual owner and the respective tenants are made responsible if a factory is conducted in a building in violation of section 79b; and I think it is clear that the agent in charge of the building should likewise be held responsible.

The agent knows whether the building complies with the requirements of section 79b. He also knows whether the leases permit the tenants to conduct factories in the building. If factories are permitted in the leases, in a building not conforming to the law, there is no reason why the agent should not be held responsible. If a tenant conducts a factory without permission to do so in his lease, in violation of the law, the agent is sure to find it out, and it is his duty to see that the violation is stopped. If he continues to act as agent for the building, knowing that the law is being violated there, he should also be held responsible for the violation. His liability is based upon the existing condition of affairs, and not upon the owner's failure to make alterations.

Under this construction, the statute is an effective weapon against nonresident owners; for, if agents refuse to take or continue in charge of buildings where such violations exist, the owners must either make the necessary alterations, or take charge of the buildings themselves and thus render themselves amenable to prosecution. Under any other construction, nonresident owners and their agents could permit violations of the statute to continue with impunity.

What has been said disposes of the constitutional question raised by the appellant, if that is properly before us. No one has any vested or constitutional right to act as agent for a building in which a violation of the law is being maintained. The appellant has not been found guilty because the owner failed to make the alterations directed by the bureau of inspection, but because it remained in charge of the building, knowing that the law was being violated there. It could have escaped liability, either by terminating the violation or by ceasing to act as agent; but it did neither. It was entirely competent for the Legislature to say that, by voluntarily remaining as agent in charge of the building when it knew that the Labor Law was being violated there, it became particeps criminis and punishable, as well as the owner, for the existing violation.

Under the circumstances disclosed in the record, however, I think that the sentence was properly suspended.

The judgment of conviction is affirmed.

CLARKE, P. J., and DAVIS, J., concur.

SCOTT, J. (dissenting). The defendant, a corporation, appeals from a judgment of the Court of Special Sessions convicting it of

a misdemeanor. The information charges that on November 12, 1915, the defendant was "in charge and control" of a certain factory building, and failed to have the said building properly provided with exits and means of escape.

The defendant was charged with a violation of section 79b of the Labor Law (added by Laws 1913, c. 461), and there is no doubt that the building in question was maintained in violation of that section in so far as concerns the exits and means of escape, and the only question in the case is whether, under the provisions of the Labor Law, this defendant is liable criminally for the failure to observe the requirements of the statute.

Section 1275 of the Penal Law makes the violation of the above-quoted (or any other) provision of the Labor Law a misdemeanor and provides that:

"Any person who violates or does not comply with any provision of the Labor Law * * * is guilty of a misdemeanor."

Section 94 of the Labor Law provides that:

"The *owner*, whether or not he is one of the occupants, instead of the respective tenants and lessees, shall be responsible for the observance and punishable for the nonobservance of the following provisions of this article, anything in the lease to the contrary notwithstanding, namely, the provisions of sections * * * 79b. * * *"

If this prosecution was against the owner of the property in question, there would seem to be no doubt that a conviction would be justified. But it is conceded that this defendant was not the owner, but only an agent of the owner. That portion of section 94 (as amended) under which it is sought to hold this defendant vicariously liable criminally, provides that:

"The term *owner* as used in this article shall be construed to mean the owner or owners of the freehold of the premises, or the lessee or joint lessees of the whole thereof, or his, her or their *agent in charge of the property*."

It is sought to uphold the judgment of conviction upon the ground that defendant is the "agent in charge of the property." The nature and extent of the defendant's agency appeared quite clearly and without contradiction. It was employed to collect the rents from the tenants, but had no authority to rent space or to sign leases. The most it could do in that regard was to entertain proposals for leases and to submit such proposals to the owner. Defendant had no authority to order or procure to be made repairs to the building, save very minor ones, costing not over $10 or $15, whereas obviously to supply the deficiencies upon which the prosecution is based would cost a very considerable sum of money. As to such major repairs the utmost defendant could do was to report the necessity therefor to the owner.

It seems to me that to hold, under these circumstances, that defendant was an "agent in charge of the property," is to strain the language of the statute beyond all reason. An agent "in charge of" property must mean an agent who has some authority and responsibility regarding it, and when an agent is sought to be held criminally liable for having failed to do something regarding the property, it should at least

appear that the terms of his agency were such that he had power to do that for the nondoing of which he is sought to be punished as a criminal. It is no answer to say that he ought to insist upon having such power, for the terms of an agency are, in general, to be determined by the principal. The act is doubtless a highly beneficial one, which should be strictly enforced, but not by prosecuting as violators persons who had no power of compliance, and are therefore innocent of wrongdoing.

In my opinion the judgment should be reversed, and the defendant discharged.

DOWLING, J., concurs.