Joseph Urgo, an Infant, by Rocco Urgo, His Guardian ad Litem, Appellant, *v.* Coles & Company, Respondent.

Rocco Urgo, Appellant, *v.* Coles & Company, Respondent.

Second Department, June 21, 1929.

*I. Maurice Wormser* [*M. N. Schleider* with him on the brief], for the appellants.

*Keyes Winter* [*James B. Henney* with him on the brief], for the respondent.

KAPPER, J. These are concurrent actions by infant and parent, the former for personal injuries and the latter the usual parent's action in such cases. They were tried together, and from directed verdicts for the defendant the plaintiffs appeal.

On the afternoon of February 5, 1927, the infant plaintiff, then in the employ of Mansfield & Co., Inc., was operating a freight elevator which fell and caused him serious injury. The defendant was the lessee of the entire building located in the borough of Manhattan. Mansfield & Co., Inc., was a subtenant of the defendant of the fourth floor of the building. The lease by the owner to the defendant was made in 1922. The Mansfield Company had been a tenant prior to that time, but entered into its sublease with the defendant in November, 1925, for the term of six years and five months. With the entire fourth floor leased by the defendant to the Mansfield Company, the latter was given the sole right of use of the elevator in question. There was also an actual occupancy of a part of the building by the defendant, and one other tenant, the New York Basket Company, occupied another entire floor in the building. There was another elevator in the building in use by both the basket company and the defendant, but with that elevator we are not concerned.

The infant plaintiff at the time of the accident appears to have been about seventeen years of age. In his work for the Mansfield Company he operated the elevator, and when not so engaged he had some work to do in the way of drilling holes in glass handled and put into some shape by machinery by the Mansfield Company, which appears to have been their business. The infant plaintiff was taking some wood in the elevator to the basement, and in going down the elevator suddenly stopped just after it left the fourth floor. The elevator was one which started and stopped by the pulling of a rope. When the elevator made this unexpected sudden stoppage, the infant again pulled the rope when suddenly and without apparent premonition it dropped to the basement. The infant testified that the elevator had unexpectedly stopped on prior occasions, such stoppage being accompanied by a jumping motion; and that he complained of it to a fellow-employee whom the Mansfield Company utilized to grease and oil the elevator and its operating parts.

After the accident it was ascertained that the fall of the elevator

was due to the pulling out or pulling apart of the hoisting cable at its shackling, and that the governor had not set properly. Since the defendant's lease to the Mansfield Company in 1922, no repairs had been made by the defendant to the elevator, nor had the defendant made any inspection thereof. After the accident, a dispute arose between the defendant and the Mansfield Company as to which of them should repair the elevator. There was some claim made that as the Mansfield Company were the sole users of the elevator the duty rested upon that company to inspect and repair, if repair were necessary. Mansfield & Co., Inc., whom the plaintiff employee did not sue, seemed, through its treasurer, eager to accept full responsibility for the care of the elevator, inclusive of any necessary repairs. Of course, this attitude of the Mansfield Company, however generous to the defendant, does not bar plaintiffs from maintaining the present action.

The learned trial justice, in directing verdicts for the defendant, expressed the view that the defendant " bore no relationship whatever to that elevator to make repairs on it, to use reasonable care." In my opinion this conclusion ought not to be upheld.

While the evidence is meager as to the kind of business carried on in this building, there was enough in the record to show that Mansfield & Co., Inc., conducted a manufacturing establishment; and the Labor Law (Laws of 1921, chap. 50, § 315) defines a tenant-factory building as one, the " separate parts of which are occupied and used by different persons and one or more of which parts is used as a factory." The defendant makes no claim that this litigation is not governed by the provisions of the Labor Law. And the provision of the law quoted has been applied in the interest of those working for an employer who, in addition to his regular business, that of conducting a theatre, had in an adjoining building a room for the making and repairing of costumes, to which costume room a dancer had gone to be fitted with a costume, after leaving which, and on attempting to return, she fell into an elevator opening because of darkness, such darkness being held to violate former subdivision 4 of section 79 of the Labor Law requiring openings leading to elevators to be kept well lighted. (*Ursprung* v. *Winter Garden Co., Inc.*, 183 App. Div. 718.) This provision of the law has been substantially re-enacted by the Labor Law of 1921 (Laws of 1921, chap. 50, § 257) which requires proper lighting for all elevator cars and entrances in every factory building during working hours. (See *Whitehouse* v. *Single*, 217 App. Div. 204.)

Section 255 of the Labor Law (*supra*) also provides that " In all factory buildings, every elevator * * * and the machinery connected therewith * * * shall be so constructed, guarded,

equipped, maintained and operated as to be safe for all persons." Some reference has already been made to the testimony as to the cause of the accident. It may again be stated that one of the reasons and probably the main reason for the elevator's fall " was the pulling out and the breaking of the cable," resulting from " defective connections." Such was the testimony. A city inspector testified that elevators are inspected by the city once in six months; and it is not disputed that such an inspection was made of this elevator about three weeks before this accident, the inspection, however, not being of such a character as involved a close examination which, if made, would have shown defects or that the elevator, as testified to, " wasn't in an operative condition." While the weakness in the cable attachment could only be determined by a slackening of the cable and a special investigation, the ordinary *visual* examination made by the city inspector would not disclose the defective cable attachment but should have disclosed any fault in the governor as to whether or not it was properly set. It was further testified by an expert that the average inspection would not disclose the poor or defective condition of the cable attachment; but a higher degree of inspection such as is not ordinarily followed by the city inspectors would be required to determine the defects shown to exist and which caused the elevator to fall.

If the present litigation were dependent upon the application of common-law principles, the doctrine *res ipsa loquitur* arising from the fact of the fall of the elevator (*Griffen* v. *Manice*, 166 N. Y. 188), might be overcome by proof of inspection tending to establish the exercise of ordinary care. But is this case governed by the rules obtaining at common law as we understand the common law in negligence actions? My conclusion is that the law is otherwise, made so by statute. The former Labor Law (§ 18) declared that an employer should not furnish or erect for the performance of labor by his employees " unsafe, unsuitable or improper " scaffolding, hoists, stays, ladders or other mechanical contrivances. The re-enactment of 1921 has not weakened this statutory command. (See Laws of 1921, chap. 50, § 240.) As to scaffolds, the law is that even where the cause of the fall of a scaffold is ascertained the statute enlarges the duty of the master and extends it to responsibility for the *safety* of the scaffold itself and thus for the want of care in the details of its construction. (*Stewart* v. *Ferguson*, 164 N. Y. 553.) And it has, moreover, been held as to a scaffold not subjected to unusual strain and which broke that the master was responsible to his employee for the result notwithstanding the defect was not discoverable by any

reasonable inspection. (*Smith* v. *Variety Iron & Steel Works Co.,* 147 App. Div. 242; affd., 208 N. Y. 543.) That the common-law rules are no longer the limitation of liability for a failure to comply with the provisions of the Labor Law is emphasized in *Gombert* v. *McKay* (201 N. Y. 27, 30), where, speaking of the statute, it was said: " The statute broadens in a substantial and important degree the liability of the class of employers designated by it. It, in terms, absolutely forbids those employers to furnish or operate, or cause to be furnished or operated, any apparatus therein mentioned of the character and quality described by it. It, in its effect, provides that any employer who either personally, or by another, furnishes for the performance of any named labor a forbidden article shall be responsible therefor. The duty of the employer created by it is personal, incapable of delegation and unaffected by caution and discrimination in selecting employees for their prudence and competency."

The burden of the respondent's argument is that reasonable care as we understood it before the statute was all that was required in looking after this elevator; that if the city inspector upon his visitation and visual observance failed to find anything requiring the placing of a violation against its use, that that was the limit of responsibility, and that any additional or further examination and inspection to determine safety was extraordinary and not a test of liability. If this were so, the statute requiring the owner of property to guard, equip and maintain the elevators therein so " as to be safe for all persons," was, in its enactment an idle ceremony. As was said in *Smith* v. *Variety Iron & Steel Works Co.* (*supra,* 244): " If the statute simply means that an employer must use reasonable care to furnish a safe scaffold, I see no purpose in passing it, as it has been the rule of the common law for centuries that a master must use reasonable care to furnish a safe working place for his servant and appliances and tools reasonably fit and safe to do the work."

The statutory obligations of an employer, as above indicated, apply in principle to the defendant, the lessee of the entire premises, who was also the lessor of the infant plaintiff's employer. Section 316 of the Labor Law imposes responsibility upon the owner of the premises for the observance of various provisions of the Labor Law, amongst them the provisions of section 255 which, as already stated, commands the guarding, equipping and maintaining of elevators in such a manner " as to be safe for all persons." In *Goetz* v. *Duffy* (215 N. Y. 53) the statute (Laws of 1909, chap. 36, § 82) was considered with reference to the provision regarding fire escapes on a factory building which were required to be

" connected with the interior by easily accessible and unobstructed openings." It appeared that alterations were made by tenants which rendered the fire escapes inaccessible, and the court, in holding the owner responsible for these conditions, said (p. 58), " the duty was imposed upon the owner to permit no interior construction by his immediate tenants which should interfere substantially with or obstruct such access by the factory employees. It seems to me that section 94 of the Labor Law could have meant nothing less than this, when it provided in express terms that the owner, whether or not he was also one of the occupants, should be responsible for the non-observance of the provisions of section 82, and that the lessee or tenant of any part of a tenant-factory should permit the owner or his representatives to enter and remain upon any part of the demised premises in order that he might fulfill his obligations in this respect."

The statute (Labor Law, § 315) contains this provision: " ' Owner ' means the owner of the premises, or the lessee of the whole thereof, or the agent in charge of the property." And by subdivision 3 of section 316 (*supra*) the tenant of any part of a tenant-factory building must permit the owner, his agents and employees " to enter and remain upon the demised premises whenever and so long as may be necessary to comply with the provisions of law, the responsibility for which is by this section placed upon the owner; and his failure or refusal so to do shall be a cause for dispossessing said tenant by summary proceedings to recover possession of real property, as provided in the code of civil procedure."

It is plain, therefore, that the defendant, the lessee of the whole premises, is charged with the aforesaid statutory duty. In *People v. Pease & Elliman, Inc.* (173 App. Div. 752; affd., 219 N. Y. 627), the obligation of compliance with the statute (former section 79-b, now section 271), relating to exits and fire escapes in a factory building, was held to be imposed upon the " agent in charge of the property," and that a criminal prosecution for a violation of the law was maintainable against such agent.

I am of the opinion that the question of the defendant's liability should have been submitted to the jury; that the direction of verdicts in its favor was erroneous.

The judgments should, therefore, be reversed upon the law and the facts, and a new trial granted, with costs to the appellants to abide the event.

LAZANSKY, P. J., RICH, YOUNG and SEEGER, JJ., concur.

In each case: Judgment reversed upon the law and the facts and a new trial granted, with costs to the appellant to abide the event.